[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 27, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-16663

_____

D. C. Docket No. 04-00131-CR-ORL-31JGG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARTURO HERNANDEZ,
also known as Cesar Muniz,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 27, 2005)

Before CARNES, HULL and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

Arturo Hernandez appeals his convictions and sentences for conspiracy to

possess with intent to distribute two kilograms of cocaine hydrochloride, and possession with intent to distribute two kilograms of cocaine hydrochloride. 18 U.S.C. § 2; 21 U.S.C. §§ 841, 846. Hernandez argues that the evidence was insufficient to support his convictions, the district court erroneously denied his motion for a new trial, and his sentence violated the Sixth Amendment, under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). Because the evidence was sufficient to support the verdicts and a new trial was not warranted, we affirm the convictions. Because the district court erred when it applied the Sentencing Guidelines as mandatory and the error was not harmless, we vacate Hernandez's sentence and remand for resentencing.

## I. BACKGROUND

In 2004, Felipe Rivas, a confidential informant, approached David Lopez's son about buying Lopez's truck. Lopez's son asked Rivas if he was interested in drugs. When Rivas spoke with Lopez about buying the truck, he told Lopez that he drove a "semi" for a living. Lopez then asked Rivas if he ever transported drugs, and Rivas responded, yes. Lopez and Rivas exchanged telephone numbers and began to communicate about transporting drugs from Texas to Florida.

Several days later, Rivas met with Lopez and Antonio Benavides to discuss transporting five "keys" of cocaine from Texas. Rivas agreed to go to Texas to get

2

the drugs for Lopez and Benavides. Days later, Rivas called Lopez and stated that he was returning from Texas with the drugs. Lopez informed Rivas that he needed five "keys" of cocaine immediately, and they arranged to meet to transfer the drugs. The agreed upon price was $17,000 per kilogram.

On the day of the meeting, Rivas called Lopez to finalize the exchange. Lopez informed Rivas that he had enough money for only two kilograms because "one of his guys had a car accident." At the meeting place, Drug Enforcement Agents provided Rivas with packaged cocaine, and Rivas took the drugs to the appointed meeting place along with Erica Rodriguez, an undercover officer who posed as his wife. Lopez met Rivas and told him that there were "some guys coming with the money." Lopez and Rivas then called Benavides to give him directions to the meeting place. Benavides then arrived with Hernandez in a black Ford Expedition. Benavides was driving the vehicle, and Hernandez was riding in the passenger seat. Lopez approached the window of the Expedition and asked how much money Benavides and Hernandez had. Hernandez replied "nine and this." Hernandez was holding a bag of money and Benavides was pulling more money out of his pockets and putting it in the bag. Lopez took the money from Hernandez.

Rivas then called Lopez over to his vehicle to look at the drugs. Rivas told

3

Lopez there were five kilograms there, and Lopez responded that he would need more because "two of these belongs to these guys." After Lopez checked the cocaine, Rivas got into his car. He heard Hernandez yell "trainos nos de nosotros" or bring ours. Rivas told Lopez to give it to him. Lopez, Benavides, and Hernandez then were arrested.

Hernandez, Lopez, and Benavides were indicted for conspiracy to possess with intent to distribute cocaine hydrochloride and possession with intent to distribute cocaine hydrochloride. Lopez pleaded guilty. Hernandez and Benavides proceeded to trial.

At trial, a number of witnesses testified regarding Hernandez's involvement in the conspiracy. Rivas, who was wearing a wire during all the transactions, testified that, at the transfer, Lopez asked Hernandez how much money there was and Hernandez responded that there was "nine and this." Rivas testified that Hernandez was holding a bag full of money. Rivas testified that Benavides also removed money from his pants pockets and put the money in the bag. After the arrests, the agents found $33,800 in the bag.

Rivas testified that, while he was completing the transaction with Lopez, he heard Hernandez say that he wanted his two in Spanish, and Lopez told Rivas "this guy wants his two." On cross-examination, Rivas stated that Hernandez said

4

"trainos nos de nosotros," which means "bring us ours." Rivas further testified that, during the transfer, Lopez stated that he would need more cocaine later because two of the kilograms of cocaine he was purchasing belonged to "these guys," which referred to Benavides and Hernandez. Rivas testified that he had not seen or heard of Hernandez before the day of the drug deal.

Rodriguez, who remained in Rivas's truck during the transfer, testified that, toward the end of the transaction, she saw Hernandez make a beckoning motion with his hand and heard him say "bring us our two." Like Rivas, Rodriguez later testified, on cross-examination, that Hernandez said "trainos nos de nosotros" or "bring us ours." Rodriguez testified that, before the transfer, she had not seen, heard, or met Hernandez.

Rana Saoud, a special agent for the Immigration and Customs Enforcement, testified that she participated in the investigation. Saoud videotaped the transaction between Lopez and Rivas. Saoud also testified that she read the Miranda rights and conducted a short interview with Benavides after he had waived his rights. Saoud testified that Benavides stated that he received a telephone call earlier in the day from Hernandez, who asked Benavides to give him a ride to meet with Lopez because Hernandez was drunk and did not want to drive. Another agent, Karl Weiss, testified that Benavides also stated he had not met

5

Hernandez before that day.

Lopez and Benavides also testified at trial. Lopez testified that Hernandez was not involved in the purchase of the cocaine. Lopez stated that he asked to borrow Hernandez's car because one of his other associates had an accident earlier in the day. Lopez testified that, when he first asked to borrow Hernandez's car, Hernandez refused because it was his employer's car. Lopez then asked Hernandez to give him a ride, but Hernandez refused because he was intoxicated. Lopez testified that Hernandez finally agreed to allow him to use the car if someone else drove. Lopez testified that, at the scene of the drug deal, he asked Hernandez to hand him a bag located in the car and asked Benavides how much money was there, to which Benavides replied "nine." He testified that Hernandez did not say "bring us ours," but instead shouted that he was leaving.

Benavides testified that Hernandez was drunk the day of the drug deal and possibly did not know what was happening. Benavides testified that he had known Hernandez about a year and a half. Benavides testified that Hernandez was asleep in the car while Benavides drove. Benavides also testified that he did not hear Hernandez say anything.

The jury convicted Hernandez of the offenses charged, and the jury found that Hernandez's offenses involved two kilograms of cocaine hydrochloride. The

6

district court denied Hernandez's motion for judgment of acquittal or, in the alternative, a new trial. The district judge stated that, although he questioned the credibility of the witnesses for the prosecution and found the case against Hernandez to be weak, he could not supplant the findings of the jury. After calculating the appropriate sentencing range under the Guidelines, the district court sentenced Hernandez to the lowest sentence in the range, and the district court stated that it would have imposed a lower sentence if it had the authority.

## II. STANDARDS OF REVIEW

We review <u>de novo</u> the denial of a motion for judgment of acquittal. <u>United States v. Bowman</u>, 302 F.3d 1228, 1237 (11th Cir. 2002). "When the motion raises a challenge to the sufficiency of the evidence, we review the sufficiency of the evidence <u>de novo</u>, drawing all reasonable inferences in the government's favor." <u>Id.</u> We review the denial of a motion for a new trial for abuse of discretion. <u>Butcher v. United States</u>, 368 F.3d 1290, 1297 (11th Cir. 2004).

## III. DISCUSSION

Hernandez appeals both his convictions and sentence. As to his convictions, Hernandez makes four arguments: (1) the evidence was insufficient to support the verdict; (2) the standard of review used to judge the sufficiency of the evidence is unconstitutional; (3) the district court employed the wrong standard when it denied

his motion for a new trial; and (4) the judgment entered against him incorrectly reflects convictions for five kilograms instead of two. Finally, Hernandez argues that his sentence, which was imposed under a mandatory guidelines system, violated the Sixth Amendment contrary to Booker. Because the government correctly concedes both that we should remand this case for resentencing and that the judgment of conviction erroneously states the amount of cocaine involved as five kilograms instead of two, we do not address those two arguments. We address Hernandez's first three arguments in turn.

### A. The Evidence Is Sufficient to Support the Conviction.

Hernandez argues that the evidence is too weak and the inferences too tenuous to support his conviction. He argues that the government has only "two brief snippets of testimony" that connect him with the offenses: the testimony that he said "nine and this" and "bring ours." Hernandez argues that the statement "nine and this" does not make sense and the government did not explain what the words meant. He also argues that the statement "bring ours" was not explained by the government. Both statements, Hernandez argues, are subject to innocent explanations. Hernandez's argument fails.

When we review the sufficiency of the evidence, we draw all reasonable inferences in the light most favorable to the government. Bowman, 302 F.3d at

1237.  "To sustain a conviction for conspiracy to possess cocaine with intent to distribute, the government must prove beyond a reasonable doubt that (1) an illegal agreement existed; (2) the defendant knew of it; and (3) the defendant, with knowledge, voluntarily joined it."  United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001).  Participation in a conspiracy can be inferred from "a development and collocation of circumstances."  Id. (citations omitted).  "Although mere presence at the scene of a crime is insufficient to support a conspiracy conviction, presence nonetheless is a probative factor which the jury may consider in determining whether a defendant was a knowing and intentional participant in a criminal scheme."  Id.

"To sustain a conviction for possession of a controlled substance with intent to distribute, the government must show that a defendant knowingly possessed the controlled substance with the intent to distribute it."  United States v. Leonard, 138 F.3d 906, 908 (11th Cir. 1998).  The government may prove possession by showing actual or constructive possession.  Id. at 909.  "Constructive possession exists when a defendant has ownership, dominion, or control over an object itself or dominion of control over the premises or the vehicle in which the object is concealed."  Id.  "Intent to distribute may be inferred from the amount of [the drug] involved."  United States v. Sarmiento, 744 F.2d 755, 761 (11th Cir. 1984).

An individual who aids and abets the crime of possession of a controlled substance with intent to distribute is punishable as a principal. 18 U.S.C. § 2. "To prove guilt under a theory of aiding and abetting, the Government must prove: (1) the substantive offense was committed by someone; (2) the defendant committed an act which contributed to and furthered the offense; and (3) the defendant intended to aid in its commission." United States v. Camacho, 233 F.3d 1308, 1317 (11th Cir. 2000).

The evidence presented at trial was sufficient to sustain Hernandez's conviction on both counts. Rivas testified that Hernandez handed over the money used to purchase the drugs and stated the amount of money was "nine and this." Rivas and Rodriguez both testified that Hernandez told Lopez to "bring us ours," which a jury could infer referred to the drugs. Rivas also testified that Lopez stated that some of the drugs belonged to Hernandez and Benavides. Besides Hernandez's presence at the transaction, Benavides and Hernandez arrived in Hernandez's vehicle. The amount of drugs also was sufficient to support a finding of Hernandez's intent to distribute the drugs.

Hernandez's arguments about this evidence are foreclosed by our standard of review, which requires us to view the evidence in the light most favorable to the government. Although Lopez and Benavides testified that Hernandez was not a

10

participant in the conspiracy, the jury was free to disbelieve their testimony. That Hernandez's statements and behavior are subject to innocent explanations is also immaterial. "A jury is free to choose among reasonable constructions of the evidence." United States v. Bell, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc). Hernandez cannot prevail on appeal by repeating his unsuccessful argument to the jury.

Our recent opinion in United States v. Diaz-Boyzo, __ F.3d __, No. 04-15629 (December 14, 2005), is instructive. In that case, Diaz-Boyzo was indicted in relation to a conspiracy to distribute methamphetamine and cocaine. Diaz-Boyzo was only present on the day of the final transaction. Two conflicting stories were presented at trial regarding Diaz-Boyzo's involvement with the conspiracy. Villa-Gamino, a member of the conspiracy, and Diaz-Boyzo testified, on the one hand, that Diaz-Boyzo was not involved in the conspiracy and was merely present at the sale of methamphetamine to the confidential informant and undercover agent because he had asked Villa-Gamino for a ride. Id. at 7-9. The government presented testimony, on the other hand, that Diaz-Boyzo arrived with Villa-Gamino to the scene of the drug transaction, rode with Villa-Gamino to pick-up part of the drug delivery, and was present at the final delivery. The government also presented testimony that Diaz-Boyzo was watching Villa-Gamino during the

11

drug transaction, and that Diaz-Boyzo possessed a loaded firearm during the delivery.  Id. at 12-13.  The jury found Diaz-Boyzo guilty.

Diaz-Boyzo argued on appeal that the evidence was not sufficient to support the verdict, but we affirmed his conviction.  We held that, although mere presence was insufficient to support the conviction, the evidence taken together was sufficient.  With regard to the testimony that Diaz-Boyzo was not involved in the conspiracy, we noted that "the jury was free to disbelieve and disregard [the dealer's] testimony that Diaz-Boyzo was not involved in the drug transaction and did not serve as protection for him."  Id. at 13.

As in Diaz-Boyzo, the evidence of Hernandez's involvement in the conspiracy was sufficient to support the conviction.  The jury was free to disbelieve Hernandez's mere presence defense and infer from the evidence that Hernandez was a willing participant.  If anything, the evidence of Hernandez's statements during the transaction was more substantial evidence of guilt than the evidence against Diaz-Boyzo.

B.  *The Standard of Review for Sufficiency of the Evidence Is Constitutional.*

In the light of the failure of his latter argument, Hernandez argues that the standard of review used in this Circuit to consider a motion for judgment of acquittal is unconstitutional both on its face and as applied to him.  He argues that

the standard of review violates the Sixth Amendment right to trial by jury and due process of law. This argument also fails.

Contrary to Hernandez's protestations, our standard for evaluating the sufficiency of the evidence preserves the right to trial by jury and due process of law. A jury determined Hernandez's guilt, and we respect that determination. Under our standard, "we are bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant." United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005). The evidence does not have to "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt[.]" Bell, 678 F.2d at 549. "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

### C. The District Court Did Not Abuse Its Discretion in Denying the Motion for a New Trial.

"On a motion for a new trial based on the weight of the evidence, the court need not view the evidence in the light most favorable to the verdict. It may weigh the evidence and consider the credibility of the witnesses." United States v. Martinez, 769 F.2d 1297, 1312 (11th Cir. 1985). "If the court concludes that,

13

despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." Id. (internal quotations and citation omitted).

Hernandez argues that the district court abused its discretion when it denied his motion for a new trial because the district court erroneously applied the wrong standard and resolved all the evidence in favor of the government when it considered his motion. Hernandez contends that if the district court had applied the correct standard to his motion for a new trial the district court would have granted him a new trial.

We agree that the district court applied an incorrect standard when it considered Hernandez's motion for a new trial. In its order denying Hernandez's motion, the district court only iterated and applied the standard of review appropriate for a motion for judgment of acquittal; that is, the district court viewed all the evidence, made all inferences, and resolved all credibility issues in the light most favorable to the government. As articulated above, that is the not the appropriate standard to apply to a motion for a new trial.

Before we remand this case to the district court to consider the motion for

14

new trial under the appropriate standard, we must determine whether the error of the district court affected Hernandez's substantial rights or was harmless. An error that "does not affect substantial rights[, however,] must be disregarded." Fed. R. Crim. P. 52(a). In determining whether the error of the district court was harmless, we consider what would have happened on appeal if the district court had granted Hernandez's motion for a new trial. Cf. Butcher, 368 F.3d at 1294-95. It is clear that the grant of a new trial could have been appealed by the government, 18 U.S.C. § 3731, and Hernandez did not contest at oral argument that the government would have appealed the grant of a new trial. If on appeal, we would have reversed the grant of a new trial, then the error of the district court did not affect Hernandez's substantial rights.

In our evaluation of whether the error the district court was harmless, we are informed by our opinion in Butcher. In that case, the district court granted habeas corpus relief on the ground that trial counsel had been ineffective for failure to file a timely motion for a new trial. Id. at 1292-93. The district court concluded that the failure of trial counsel prejudiced the petitioners because the trial court would have granted the motion for new trial if it had been timely filed. Id. at 1294. We reasoned that, in determining the prejudice element of the Strickland test, we must consider what would have happened on appeal: "the fairness and reliability of the

criminal proceeding . . . is not served by deciding the issue without regard to what would have happened on appeal." Id. at 1295. We reversed the grant of habeas relief because it would have been an abuse of discretion to grant a new trial. Id. at 1300.

The logic of Butcher applies as well to our review of whether the error of the district court was harmful. To explain whether we would have reversed the grant of a new trial on appeal, we first consider the standard for our review of such decisions. We then review the evidence presented at trial.

"Although we . . . review a court's denial of a motion for a new trial for abuse of discretion, we more closely scrutinize a court's grant of a new trial." United States v. Cox, 995 F.2d 1041, 1044 (11th Cir. 1993). "[T]he grant of new trial based on the weight of the evidence is more closely scrutinized than the grant of new trial on other grounds." Butcher, 368 F.3d at 1297. "[W]hile we do not conduct pure de novo review in these circumstances, the review that we do conduct is not much different because we want 'to assure that the judge does not simply substitute his judgment for that of the jury.'" Id. (quoting Conway v. Chem. Leaman Tank Lines, Inc., 610 F.2d 360, 363 (5th Cir.1980)). "We may conclude that the district court overreached its authority by granting a new trial if our review of the record reveals that the evidence did not preponderate heavily against the

16

jury's verdict." Cox, 995 F.2d at 1044.

Applying that standard, our review of the evidence convinces us that it did not preponderate heavily against the verdict. The testimony of the witnesses at trial produced two conflicting stories, either of which the jury could have believed. Lopez and Benavides testified, on the one hand, that Hernandez was not part of the conspiracy but was only present at the drug transfer because the car belonged to Hernandez's employer. Lopez and Benavides's account was supported by the testimony of Rivas and Rodriguez that Hernandez was not present at any meetings before the May 28 drug transfer. Rivas and Rodriguez described, on the other hand, events from which a jury could infer that Hernandez was familiar with the purpose and details of the conspiracy.

The testimonies of Rivas and Rodriguez provided ample support for the charges by the government. Rivas testified that Hernandez was holding the money bag and was aware of the amount of cash present. Rivas also testified that Lopez told him some of the cocaine was for Benvaides and Hernandez. Both Rivas and Rodriguez testified that they heard Hernandez say "bring us ours."

The jury chose to believe the latter account of the drug transaction. The jury found Hernandez guilty. That verdict implicitly rejected the testimonies of Lopez and Benavides and credited the testimonies of Rivas and Rodriguez.

17

Although the district court was unimpressed with the case presented by the government, the district court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." Martinez, 763 F.2d at 1313-14. The verdict reached by the jury was reasonable, and the evidence does not "preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." Id. at 1313. "Motions for new trials based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really 'exceptional cases.'" Martinez, 763 F.2d at 1313. This case is not the exceptional one that would warrant a new trial. Because the grant of a new trial would have been an abuse of discretion, the error of the district court in employing the wrong standard for a new trial was harmless.

## IV. CONCLUSION

We affirm Hernandez's convictions and remand this case for resentencing with advisory guidelines. We also instruct the district court to correct the error in the judgment of conviction to reflect the drug amount found by the jury.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

18