[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 4, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-12693
Non-Argument Calendar

_____

D. C. Docket No. 06-00198-CR-CC-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALBERTO NARANJO DELATORRE,
a.k.a. Beto La Chingadera,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 4, 2009)

Before TJOFLAT, BIRCH, and DUBINA, Circuit Judges.

PER CURIAM:

Alberto Naranjo Delatorre appeals his convictions for conspiracy to possess

with intent to distribute at least five kilograms of cocaine and aiding and abetting possession with intent to distribute at least five kilograms of cocaine. He asserts that there was insufficient evidence for the jury to convict him on either count and that the district court abused its discretion by permitting an expert witness to testify to matters outside the scope of her expertise. After reviewing the record and the parties' briefs, we AFFIRM his convictions.

## I. BACKGROUND

A federal grand jury sitting in the Northern District of Georgia returned a two-count indictment charging Delatorre and Fernando Villanueva-Naranjo with conspiracy to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) and 846, and aiding and abetting possession with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A)(ii) and 18 U.S.C. § 2. R1-10. Villanueva-Naranjo subsequently entered a guilty plea, but the case against Delatorre proceeded to trial. The jury found Delatorre guilty on both counts, and he was sentenced to 292 months of imprisonment, along with five years of supervised release and a $200 special assessment. R2-193.

At trial, multiple witnesses testified regarding the allegations against Delatorre. Ron Skipper, a Drug Enforcement Agency ("DEA") agent, discussed

Delatorre's actions on 27 February 2006. On that date, Skipper was conducting surveillance on a house in Duluth, Georgia that he had reason to believe would be the site of drug transaction. R10 at 30–33. According to Skipper, Villanueva-Naranjo arrived at the house in a green Infiniti car, parked in the driveway, and went inside the building. Id. at 35–36. About one minute later, Delatorre came out of the front door to the house, entered the Infiniti, and backed out of the driveway. Id. at 36–37. Around the same time, a black Ford Focus driven by Villanueva-Naranjo emerged from the garage and backed out of the driveway. Id. at 37-38. Delatorre then parked the Infiniti, approached the Ford, spoke briefly to Villanueva-Naranjo, returned to the Infiniti, and drove off, with the Ford following behind him. Id. at 39. Skipper tailed the two cars. At one point, when the cars had pulled up side-by-side, he observed Delatorre and Villanueva-Naranjo speaking to each other. Id. at 41. Shortly thereafter, Georgia law enforcement conducted a traffic stop on the Ford, based on a request by the DEA, and discovered over sixteen kilograms of cocaine hidden inside the side panels of that car. Id. at 45, 48, 54. A different witness, DEA agent Robert Murphy, testified that he saw Delatorre drive past the traffic stop twice, slowing down on the second occasion to look at the scene. R11 at 166–67.

Jay Mortenson, another DEA agent, testified regarding the 21 April 2006

3

execution of a search warrant for a house in Lawrenceville, Georgia. Id. at 223, 225, 228. In the course of this search, Mortenson encountered Delatorre, for whom he had two arrest warrants. Id. at 229, 236–37. The agents conducting the search found four cellular telephones in the master bedroom as well as a notebook containing names and telephone numbers and more than $16,000 in cash. Id. at 239–43, 247. The assigned phone number for one of the telephones matched a number that was the subject of a DEA investigation. Id. at 241–42. In addition, a separate witness, Maria Cervantes-Suarez, who had lived in the house for two years, testified that Delatorre was a resident of the house and slept in the master bedroom. R12 at 362–65.

Anthony Hall, a former drug dealer, also testified at trial. Id. at 397–98. Hall stated that sixteen kilograms of cocaine would be an amount commensurate with distribution rather than personal use. Id. at 407. He also noted that, when he was a drug dealer, he frequently changed cellular phones to avoid wiretapping and employed coded language when requesting drugs, such as "girls" for cocaine, "paper" for money, and "work" for any type of drug. Id. at 409–12. In addition to these more general topics, Hall also discussed his interactions with Delatorre and Villanueva-Naranjo. Hall first met Villanueva-Naranjo, whom he knew as "Polo," through a mutual acquaintance, Lee Braggs. Villanueva-Naranjo supplied Braggs

4

and Hall with marijuana and cocaine, the latter ranging from two to five kilograms. Id. at 422–23, 425–27. On one occasion in early 2005, Hall met with Villanueva-Naranjo, who brought along Delatorre to the encounter. At this meeting, Hall requested that Villanueva-Naranjo provide him with more drugs so that Hall could pay off a debt owed by Braggs, who was then in police custody. Id. at 432–37. Hall's discussion with Villanueva-Naranjo involved multiple instances of Hall making a statement in English to Villanueva-Naranjo, Villanueva-Naranjo turning to Delatorre and briefly conversing with him in Spanish, and then Villanueva-Naranjo responding in English to Hall's statement. Id. at 437–41. All of Hall's remarks dealt with negotiating the terms for providing the cocaine he requested.[1] Id. The conversation ended with Villanueva-Naranjo stating that he would speak with "his friend" to arrange Hall's pickup of the cocaine. Id. at 441. Hall spoke with Villanueva-Naranjo the following day and received the five kilograms of cocaine he requested. Id.

The government also called Spring Williams, who was the DEA case agent for Delatorre's case, as an expert witness on the organization and structure of Mexican drug-trafficking organizations. R13 at 545, 572. Delatorre conducted a voir dire examination of Williams, after which he decided not to object to her

---

[1] Hall did not speak Spanish, so he was unable to translate what Villanueva-Naranjo and Delatorre were saying to each other. Id. at 438.

5

opinions, and the court deemed her to be a qualified expert in the aforementioned areas. Id. at 572–74. As part of Williams's testimony, she noted her belief that, based on her training and experience, the house in Duluth was a "stash house" — a storing place for drugs in which people might live but without the normal array of furnishings. Id. at 579–80. She also discussed her familiarity with the lingo of the drug trade, including the use of particular code words in both oral conversations and drug ledgers. Id. at 588–90. Relying on this knowledge, she stated the notebook found at the Lawrenceville house was a drug ledger because of the language used in it. Id. at 590–92.

Williams also discussed a wiretapping investigation the DEA conducted for a different case, in which they had recorded various telephone calls involving Delatorre, including one made to "Bucio," a large-scale Atlanta drug distributor. Id. at 608–09. In these telephone calls, she explained, Delatorre used coded words to identify himself as a source of drugs and discussed purchasing and supplying drugs. Id. at 616–618. Williams also testified about a number of other calls which had been wiretapped either for this investigation or another case, in many of which Delatorre was making coded statements regarding the buying, selling, and shipping of drugs. See, e.g., R14 at 664–70. After the completion of Williams's testimony, Delatorre moved for a directed verdict on both counts of the indictment. Id. at 754.

6

The court found that the government had presented sufficient evidence in support of its allegations and thus denied the motion. Id. at 755. Delatorre now appeals this decision as well as his convictions.

## II. DISCUSSION

Delatorre raises three issues on appeal. First, he contends that there was insufficient evidence as a matter of law to sustain his convictions. Second, he asserts that the district court erred in allowing Williams to testify as an expert witness about matters beyond the scope of her expertise. Third, he argues that the district court erred in denying his motion for judgment of acquittal. We will address these arguments in turn.

A. Sufficiency of the Evidence

Delatorre alleges that there were a number of problems with the evidence presented by the government at trial, which render it insufficient to support his convictions. He notes that the government failed to offer any proof that he knew about, handled, or directed anyone to conceal the packages of cocaine found in the Ford Focus. He also criticizes the government's failure to present any statements from co-conspirators or evidence that he owned or lived in the houses in Lawrenceville and Duluth. In addition, he asserts that the government should have used more advanced voice-recognition techniques in analyzing the taped

7

conversations.

We review claims involving the sufficiency of the evidence to support a conviction de novo. See United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2008) (per curiam). In so doing, we view all evidence in the light most favorable to the government and make all reasonable credibility choices and inferences in favor of the jury's verdict and the government's position. See id. We must affirm a conviction unless no reasonable construction of the evidence would support the jury's conclusion of guilt beyond a reasonable doubt. See id.

To prove possession with intent to distribute cocaine, the government must establish that the an individual possessed cocaine, had knowledge of this possession, and intended to distribute the cocaine. See United States v. Woodard, 531 F.3d 1352, 1360 (2008). The government can use direct or circumstantial evidence to prove each of these three elements. See id. Possession could be either actual or constructive. See id. Actual possession involves "direct physical control" over the cocaine, whereas constructive possession can be established "by a showing of ownership or dominion and control over the drugs or over the premises on which the drugs are concealed." Id. (quotation marks and citations omitted). To prove aiding and abetting possession with intent to distribute, the government must show that someone committed that offense, that the defendant "committed an

8

act which contributed to and furthered" the offense, and that the defendant intended to aid in the commission of the offense. United States v. Camacho, 233 F.3d 1308, 1317 (11th Cir. 2000)

A conviction for conspiracy to possess cocaine with intent to distribute will be sustained if the government proves "beyond a reasonable doubt that (1) an illegal agreement existed; (2) the defendant knew of it; and (3) the defendant, with knowledge, voluntarily joined it." United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005) (quotation marks omitted). A defendant's presence at a crime scene would be insufficient to support a conspiracy conviction on its own, though it could be a "a probative factor which the jury may consider in determining whether a defendant was a knowing and intentional participant in a criminal scheme." Id. (quotation marks omitted). Participation in a conspiracy can be shown through circumstantial evidence. See United States v. Anderson, 326 F.3d 1319, 1329 (11th Cir. 2003). Accordingly, the government has to prove only that a defendant "knew the general nature and scope of the conspiracy." Id.

Based on our review of the record, we find that the government presented sufficient evidence to support the jury's determination that Delatorre possessed cocaine with the intent to distribute and that he was involved in a conspiracy to possess with intent to distribute cocaine. The evidence uncovered during the

9

search of the Lawrenceville house supported both convictions when considered in combination with witness testimony. Cervantes-Suarez testified that Delatorre lived in the house and slept in the master bedroom in which police found several cell phones. Agent Williams stated her belief that the notebook found in the house was a drug ledger based on her familiarity with such objects. Additionally, Hall noted that he used multiple cell phones to avoid wiretapping. From all of this evidence, the jury reasonably could have inferred that the objects in the house reflected participation in drug trafficking and that Delatorre took part in this trafficking by virtue of his presence in key areas of the house. Further, the jury could have viewed the language in the notebook and Delatorre's use of the master bedroom as proof of his role in the possession and distribution of cocaine as well as his control over implements used in connection with those actions.

The evidence regarding the interactions between Delatorre and Villanueva-Naranjo also supported both convictions. Agent Skipper testified that he saw Delatorre and Villanueva-Naranjo confer with each other on multiple occasions shortly before the police found the cocaine in the Ford Focus that Villanueva-Naranjo was driving. Additionally, Hall noted that the amount of cocaine in the car was more in line with distribution than personal use. The jury could have reasonably concluded based on this testimony that Delatorre and Villanueva-

10

Naranjo had discussed the contraband cocaine and conspired to distribute this amount, thereby also finding that Delatorre intended to distribute the cocaine. Similarly, the jury would have been reasonable in viewing Delatorre's actions as aiding and abetting possession and distribution of cocaine, particularly with respect to the quantity found in the Ford Focus.

Hall's testimony regarding his meeting with Delatorre and Villanueva-Naranjo further supports the jury's verdict. Hall indicated that, in the course of his negotiations with Villanueva-Naranjo about obtaining cocaine, Villanueva-Naranjo repeatedly spoke with Delatorre before responding to Hall's statements. Though Hall did not understand Spanish and thus could not say what the topics of these discussions were, the jury reasonably could have inferred that Delatorre and Villanueva-Naranjo were conferring about the cocaine. The jury thus would have been justified in treating this as circumstantial evidence that Delatorre and Villanueva-Naranjo were discussing the quantity and price of the drugs that they would sell to Hall. Additionally, since Hall subsequently received the drugs he requested in that meeting, the jury could have reasonably concluded that Delatorre either exercised control over the distribution of cocaine or aided and abetted Villanueva-Naranjo in such distribution.

This evidence, taken as a whole and viewed in the light most favorable to the

11

government, therefore showed that Delatorre knowingly and voluntarily joined in an illegal agreement with Villanueva-Naranjo to possess and distribute cocaine and that he aided and abetted possession with intent to distribute cocaine. The evidentiary omissions mentioned by Delatorre, such as the lack of photographic evidence, do not affect this conclusion since the government presented sufficient circumstantial evidence to support the verdict. In addition, Delatorre cites no authority for requiring the government to have employed more advanced voice recognition techniques. We thus find those arguments to be without merit. Accordingly, we conclude that the evidence was sufficient to support both of Delatorre's convictions. See Woodard, 531 F.3d at 1360; Hernandez, 433 F.3d at 1333.

B. Agent Williams's Testimony

Delatorre argues that the district court erred by permitting Williams to testify as an expert regarding matters outside the scope of her expertise. In particular, he takes issue with Williams's testimony regarding the proper interpretation of language in the wiretapped conversations and notebooks, which she asserted were coded drug references. Delatorre notes that since Williams was not an expert in Mexican drug traffickers, she should not have been allowed to testify regarding the meaning of certain terms allegedly used by such individuals. The government's

12

failure to provide someone involved in the conspiracy who could independently corroborate Williams's interpretations, he asserts, effectively usurped the jury's ability to evaluate accurately and fully the evidence. In addition, Delatorre contends that the probative value of this evidence was outweighed by its prejudicial value and thus should have been inadmissible under Federal Rule of Evidence 403.

We review a district court's decisions regarding the admissibility of expert testimony and the reliability of expert opinions for abuse of discretion.[2] See United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc). The Federal Rules of Evidence permit expert witnesses to testify about any form of "specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue" so long as they are "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The testimony is admissible if it is "based upon sufficient facts or data" and "is the product of reliable principles and methods" that the witness has applied reliably to

---

[2] The government contends that we should review for plain error Delatorre's argument regarding the failure to present evidence to verify the accuracy of Williams's opinions since he did not raise the argument before the district court. Though Delatorre did not mention this issue to the district court, we will treat it as a subpart of his general objection to the admission of Williams's testimony, an argument he has preserved. We thus will apply the abuse of discretion standard to Delatorre's entire allegation. Given that we find the district court did not abuse its discretion, there would also be no plain error, so the ultimate outcome would be the same regardless of which standard of review we applied.

13

the facts of the particular case.  Id.  If we find that the district court improperly allowed evidence to be introduced, we then look at whether the error would be harmless in light of the non-problematic evidence produced.  See United States v. Carrazana, 921 F.2d 1557, 1568 (11th Cir. 1991) (noting that, even if drug lingo testimony was excluded, there was ample evidence in record to support defendant's drug conspiracy conviction).

Drug enforcement agents can provide expert testimony regarding drug dealing operations because of their ability "to help a jury understand the significance of certain conduct or methods of operation unique to the drug distribution business."  United States v. Garcia, 447 F.3d 1327, 1335 (11th Cir. 2006) (quotation marks and citation omitted).  For much the same reason, we have found that a district court's admission of expert testimony of policemen interpreting drug codes, slang, and other jargon does not violate Rule 702.  See id. Delatorre correctly notes, however, that the officers whom we previously have permitted to testify as experts regarding drug jargon appear to have been more well-versed in the particular drug trafficking schemes at issue than Williams was here.  See, e.g., id. (Mexican drug trafficking case in which officer took part in over 50 drug investigations, the majority of which involved Mexican drug traffickers); Carrazana, 921 F.2d at 1567 (officer in Cuban drug case was "a native

14

Spanish speaker with an understanding of slang peculiar to the Cuban dialect ").

Nevertheless, we find that Williams's knowledge of and expertise in dealing with drug trafficking schemes was sufficient experience to allow her to testify as an expert about matters relating to such organizations, including drug jargon. See Garcia, 447 F.3d at 1335 (noting that officer's past involvement with drug investigations and familiarity "with the coded language that some drug trafficking organizations use" was sufficient to make him "an experienced narcotics agent") (quotation marks omitted).

Delatorre's Rule 403 argument also fails. Evidence regarding coded drug language can be highly probative because of the often secretive nature of discussions involving drug dealers. See id. This probative value generally is sufficient to outweigh any potential prejudice, and we see no reason to view the value of Williams's testimony any differently. See id.

Accordingly, we find that the district court did not abuse its discretion in permitting Williams to testify about drug jargon based on her own experience, especially since the jury could take into account her expertise in that area. In addition, the government presented ample independent evidence concerning Delatorre's involvement in the drug conspiracy. Any error in admitting expert witness testimony therefore would be harmless.

15

C. <u>Motion for Judgment of Acquittal</u>

Delatorre contends that the district court erred in denying his motion for a judgment of acquittal by failing to use the appropriate legal standards for evaluating his claims. "We review de novo the district court's denial of a motion for judgment of acquittal, applying the same standard used in reviewing the sufficiency of the evidence, meaning that we view the facts and draw all inferences in the light most favorable to the Government." <u>United States v. Descent</u>, 292 F.3d 703, 706 (11th Cir. 2002) (per curiam). As previously noted, there was sufficient evidence in the record to support the jury's finding of guilt on both counts. Since we apply the same sufficiency standard in assessing the district court's disposition of Delatorre's motion, we find no error in the court's decision to deny that motion.

### III. CONCLUSION

Delatorre asserts that there was insufficient evidence to support his convictions for conspiracy to possess with intent to distribute cocaine and aiding and abetting possession with intent to distribute cocaine. Based on our review of the record, we find that there was sufficient evidence to support his convictions and to deny his motion for judgment of acquittal. Additionally, the district court's decision to permit Agent Williams to testify regarding drug jargon was not an abuse of discretion and, at worst, amounted to harmless error. Accordingly, we

16

AFFIRM Delatorre's convictions.

**AFFIRMED.**