[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13115
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 24, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00185-CR-ORL-31KRS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ADAN GONZALEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 24, 2009)

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Adan Gonzalez appeals his convictions for conspiracy to distribute and

possession with intent to distribute five kilograms or more of cocaine. 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 846. Gonzalez challenges the admission of a prior conviction, the sufficiency of the evidence, and the denial of his motion for a new trial. We affirm.

## I. BACKGROUND

Gonzalez was indicted for his participation in a conspiracy to distribute cocaine. In 2004, the Drug Enforcement Agency began to investigate the Beto trafficking organization. Using a confidential informant, the Agency infiltrated the organization and arranged for a target, Sergio Jacobo-Rojas, to accept a delivery of cocaine on February 12, 2007, at a rest stop near Longwood, Florida. Gonzalez coordinated the transport and delivery of the cocaine and was later apprehended in Kansas.

On February 8, 2007, Gonzalez called a fellow truck driver, Cristo Hildago-Sanchez, and offered him $10,000 to assist in the delivery of 100 pounds of marijuana to Florida. Gonzalez previously had been arrested for transporting drugs through the Sierra Blanca border checkpoint outside El Paso, Texas, and needed Hildago to transport the drugs. Hildago agreed and met Gonzalez in Phoenix, Arizona, where two men of Mexican origin loaded Hildago's truck with what he believed to be large boxes of marijuana. The two men, later identified as brothers

2

David and Gabino Lugo-Montes, made Hildago uncomfortable and he wrote down their license plate number. After the transfer, Gonzalez and Hildago left. The two men later stopped their trucks, removed smaller containers of drugs from the large boxes, hid some of the drugs among crates of lettuce in the trailer of Hildago's truck, and concealed the rest of the drugs inside a suitcase in the sleeping compartment of the truck.

Gonzalez and Hildago drove in tandem and called each other frequently during their cross-country trip. At one point during the trip, Gonzalez was delayed several hours at a weigh station. While he waited for Gonzalez, Hildago inspected a container of drugs and discovered that he was transporting cocaine. Angry that Gonzalez would deceive him and hoard the additional cash usually paid to smuggle cocaine, Hildago took a photograph of the cocaine on his cell phone and sent the photograph to Gonzalez. Hildago wanted to end his participation in the smuggling operation, but Gonzalez refused to load the cocaine on his truck. Gonzalez later contacted the Lugo brothers, who persuaded Hildago to complete the delivery.

Gonzalez and Hildago arrived at the rest stop in Florida on the morning of February 12, 2007. Gonzalez parked his truck and trailer in an isolated area, left Hildago with the two trucks, and accompanied the Lugo brothers to another location to receive payment for the delivery. When Gonzalez returned, Hildago

3

warned that he would wait only twenty minutes, then leave with the cocaine. Gonzalez passed that information to a contact, who dispatched Jacobo and the confidential informant.

When Jacobo arrived at the rest stop, Gabino Lugo climbed into Hildago's truck, counted and repackaged the bundles of cocaine, and placed the boxes inside the confidential informant's truck. As Gabino Lugo moved the cocaine, Hidalgo walked to the Lugos' car, where David Lugo handed Hildago $20,000 and instructed him to pay Gonzalez $10,000.

Although they knew that the delivery was to occur at the rest stop, the federal agents were not aware of the time for the delivery and did not have enough officers to interrupt the drug transaction safely. Agents intercepted Jacobo and the confidential agent at the next exit on the interstate highway, while other agents secured the rest stop. Agents placed Jacobo under arrest, seized the cocaine and three cellular telephones, and questioned the confidential informant. The informant stated that the cocaine was removed from a white trailer that had the words "Miami, Florida" painted on the side. The trailer was being pulled by a truck and was driven by a Hispanic man.

Agent James Dicaprio closed the rest stop and surveyed the area for suspicious individuals. Agent Dicaprio approached Gonzalez, who was nervously

4

talking on his cellular telephone, and asked for the telephone and identification. Hidalgo saw Gonzalez and the agent and returned to his truck with the cash, which he divided and concealed under a mattress inside the truck and in his girlfriend's purse. Later, Agent Jeffrey Blanton approached Hidalgo and asked him to consent to a search of his trailer. When Hidalgo's girlfriend admitted to federal agents that she had $10,000 in her purse, Hidalgo claimed the money and stated that he had a gun in the cab of his truck. Agents searched the truck and discovered $10,000 in cash under the mattress, two cellular telephones, and a suitcase and cardboard box that contained kilogram packages of cocaine. Under the mistaken belief that all participants in the drug transaction had been apprehended, Agent Dicaprio allowed Gonzalez to leave the rest stop.

Hidalgo provided a statement to federal agents in which he implicated Gonzalez and the Lugo brothers. Later, when Agent Dicaprio was shown photographs, he remembered Gonzalez from the rest stop. In September 2007, authorities discovered Gonzalez hiding in the sleeping berth of a truck that had stopped in Kansas for a routine safety inspection.

Gonzalez admitted that he knew the Lugo brothers and that he had introduced them to Hildago in Phoenix, Arizona, in February 2007. The Lugo brothers were arrested in Texas and officers seized three cellular telephones, all of

which were assigned a 909 area code. One of the telephones was assigned the phone number 909-223-9254; the portable memory chip, or SIM card, had been removed from another telephone. Cellular telephone records established that Gonzalez had called 909-223-9254 about 100 times during February 2006, and Hidalgo later identified the number as a means to contact the Lugo brothers.

Before trial, Gonzalez filed a motion in limine to exclude any reference to a previous conviction for misprision of a felony. See 18 U.S.C. § 4. Gonzalez argued that the conviction was irrelevant under Federal Rule of Evidence 402 and should be excluded as unfairly prejudicial under Rule 403. The government argued in response that the conviction was admissible to establish Gonzalez's intent, knowledge, plan, and absence of mistake. The district court did not decide the motion before trial.

After opening statements, the district court heard arguments on Gonzalez's motion in limine. The government argued that the previous crime was similar to his present charges. The government explained that federal border agents discovered 399 pounds of marijuana inside a trailer attached to Gonzalez's truck and he disclaimed any knowledge of the drugs. Gonzalez was charged for possession with intent to distribute marijuana, but later pleaded guilty to the lesser offense of misprision of felony. The district court denied the motion based on the

"underlying facts relating to [Gonzalez's] prior conviction."

At trial, Hildago, his girlfriend, and Jacobo testified about the events related to the drug transaction. Hildago identified his cellular telephone records and photographs of the Lugo brothers. Gonzalez failed to object when a federal agent testified about Gonzalez's previous conviction. Gonzalez did not present any evidence on his behalf and moved "to dismiss for lack of evidence." The district court denied the motion, and the jury convicted Gonzalez of conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine.

Two months later, Gonzalez moved for a new trial based on newly-discovered evidence. Gonzalez based his motion on a report prepared by an Agency analyst that stated that the telephone number 909-223-9254 was assigned to a man named Alec E. Burton. Testimony at trial established that the telephone was pre-paid and had no subscriber information to identify the purchaser. Gonzalez used the report at trial to challenge testimony from Hildago that the telephone number was used by the Lugo brothers. Gonzalez alleged in his motion for a new trial that he diligently had tried to determine the true owner of the telephone; his counsel had spoken to a person named Alberto Mora by dialing two different numbers listed on the cellular phone list; and Mora knew both Gonzalez

7

and Hidalgo, but Mora was going to be out of town and was reluctant to testify at Gonzalez's trial. Gonzalez alleged that Mora had agreed recently to testify that he had received several calls from Hidalgo on the 9254 telephone number, which would establish that Hidalgo provided false testimony that the telephone number belonged to the Lugo brothers. The district court denied the motion.

## II. STANDARDS OF REVIEW

We apply three standards of review in this appeal. Objections or arguments regarding evidentiary rulings that are not raised during trial are reviewed for plain error. United States v. Khoury, 901 F.2d 948, 966 (11th Cir. 1990). We review de novo the denial of a judgment of acquittal, and construe the evidence in the light most favorable to the government. United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007). We review the denial of a motion for a new trial for abuse of discretion. United States v. Vallejo, 297 F.3d 1154, 1163 (11th Cir. 2002).

## III. DISCUSSION

Gonzalez challenges his conviction on three grounds. First, Gonzalez argues that his previous conviction for misprision of felony was not relevant to his drug charges and was not admissible at his trial. Second, Gonzalez argues that he was entitled to an acquittal because the government failed to prove that he actually or constructively possessed the cocaine. Third, Gonzalez argues that he is entitled to

8

a new trial based on newly-discovered evidence. These arguments fail.

The district court did not plainly err when it denied Gonzalez's motion in limine. The circumstances underlying Gonzalez's conviction for misprision of felony were relevant to Gonzalez's intent and knowing participation in a conspiracy to distribute cocaine and his efforts to abet the possession of the cocaine. See Fed. R. Evid. 404(b). Gonzalez's "not guilty plea in [his] drug conspiracy case . . . [made] intent a material issue and open[ed] the door to admission of prior drug-related offenses as highly probative, and not overly prejudicial, evidence of [his] intent." United States v. Calderon, 127 F.3d 1314, 1332 (11th Cir. 1997), modified on other grounds by United States v. Toler, 144 F.3d 1423 (11th Cir. 1998).

The district court did not err by denying Gonzalez's motion for a judgment of acquittal. Ample evidence also established Gonzalez's involvement in the criminal offenses. The government proved that Gonzalez knowingly participated in a conspiracy to distribute cocaine and that he aided and abetted in the possession of cocaine by coordinating the transport and delivery of the illegal drugs. See 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 846; United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005); United States v. Camacho, 233 F.3d 1308, 1317 (11th Cir. 2000). The government was not required to prove that Gonzalez was in actual

9

or constructive possession of the drugs. See Hernandez, 433 F.3d at 1333.

The district court did not abuse its discretion by denying Gonzalez a new trial. Gonzalez discovered the purported owner of the 9254 cellular telephone number during his trial. Although the witness refused to testify, Gonzalez suggested at trial that the number was owned by someone other than the Lugo brothers. The admission of evidence that another person owned the 9254 cellular telephone number also would not probably produce a different result because there is ample evidence that Gonzalez conspired to distribute cocaine, called and met with the Lugo brothers in furtherance of that conspiracy, and arranged for the transportation and delivery of the cocaine.

## IV. CONCLUSION

Gonzalez's convictions are **AFFIRMED**.