[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 5, 2010
JOHN LEY
CLERK

No. 09-14958
Non-Argument Calendar

_____

D. C. Docket No. 08-00123-CR-W-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ABDOULAYE DJIBRIL BARRY,
KEMO M.S. KRUBALLY,
MOMADOU NOUSSY DIALLO,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Alabama

_____

(August 5, 2010)

Before BLACK, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Kemo Krubally, Abdoulaye Djibril Barry, and Momadou Noussy Diallo ("Noussy") appeal their convictions for conspiracy to traffic in counterfeit goods, 18 U.S.C. § 371, and aiding and abetting each other in trafficking counterfeit goods, 18 U.S.C. § 2320(a). Each of them contends that the government failed to show that he knew that the goods being sold were counterfeit. Barry and Noussy argue that they were merely store clerks who had no knowledge of the nature of the goods.

We review de novo whether sufficient evidence supports a conviction, viewing the evidence "in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." United States v. Ortiz, 318 F.3d 1030, 1036 (11th Cir.2003) (citation and quotation marks omitted). The government's proof need not exclude every reasonable hypothesis of innocence. United States v. Tampas, 493 F.3d 1291, 1297–98 (11th Cir. 2007). The evidence is sufficient unless no reasonable trier of fact could find guilt established beyond a reasonable doubt. See United States v. Lyons, 53 F.3d 1198, 1202 (11th Cir. 1995).

Under 18 U.S.C. § 371, the elements of the offense of conspiracy are: (1) an agreement between two or more persons; (2) to commit a crime against the United States; (3) and an overt act by one of them in furtherance of the agreement. United

States v. Guerra, 293 F.3d 1279, 1285 (11th Cir. 2002). "The existence of a conspiracy may be proved by circumstantial evidence and may be inferred from concert of action." Id.

Under 18 U.S.C. § 2320(a), it is illegal if someone "intentionally traffics . . . in goods or services and knowingly uses a counterfeit mark on or in connections with such goods or services, or intentionally traffics . . . [in goods] knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause confusing, to cause mistake, or to deceive."[1] An aiding and abetting conviction requires the government to prove: "(1) the substantive offense was committed by someone; (2) the defendant committed an act which contributed to and furthered the offense; and (3) the defendant intended to aid in its commission." United States v. Camacho, 233 F.3d 1308, 1317 (11th Cir. 2000).

The evidence showed that Krubally owned a store that sold huge quantities of counterfeit goods, and he operated the store along with Barry and Noussy. This was not your ordinary shopping establishment. It was located in a shopping center, but no sign was in front of the store to indicate that anyone could shop there, and

---

[1] The appellants argue that the government failed to establish that the counterfeit marks on the goods they sold were likely to cause confusion. See 18 U.S.C. § 2320(a); United States v. Torkington, 812 F.2d 1347, 1351–52 (11th Cir. 1987). The government, however, presented the testimony of two expert witnesses who said that the goods probably would look real to the average person, as well as one lay witness who said that she actually was unaware that she was buying counterfeit goods. The jury was entitled to credit that testimony. Ample evidence therefore supports the likelihood of confusion element of the convictions.

the windows were covered with strips of white material so that people could not see inside. Bars were on the front windows. Witnesses testified that the door to the store was kept locked and that, after they had been admitted to shop there, it was locked behind them. That unusual level of security for a store that sold consumer goods—shoes, purses, shoes, and pants—suggests that the appellants knew that they were trafficking in counterfeit goods.

One regular customer testified that when he returned damaged items to the store, he and the people there would use the word "bufale" to describe the items as fake or counterfeit. The jury was entitled to credit that testimony and to infer that all of the appellants, who regularly worked at the store, used the "bufale" term.

The jury also heard testimony: that no sales tax was charged on at least some purchases; that purchases were sometimes placed into black plastic garbage bags—an odd choice for a legitimate business; that all three appellants knew the code to, and operated, the store's security system; that each of them frequently bought thousands of dollars worth of money orders at the post office in order to pay for deliveries; and that the unusually steep markdowns indicated that the goods were counterfeit. That evidence supports the conclusion that all three appellants were knowing and active members in the criminal enterprise.

The government also presented some evidence that applies to fewer than all

of the appellants. It showed that Krubally made regular trips to purchase counterfeit goods for the store, and that he actively negotiated discounts for certain customers. It presented testimony from a UPS driver who said that Barry had told him that the goods were not "legit." The government also showed that Barry's vehicle contained 200 designer labels used for counterfeiting. Even if the labels were not actually applied to goods found in the store, it could be inferred that the labels were intended for such a use, and that his possession of them indicated knowledge of the criminal conspiracy and an intent to participate. As for Noussy, the jury heard testimony that he actively assisted customers during their purchases, showing them the items, quoting prices, and writing up the bill of sale. Contrary to Noussy's argument, that is more than "mere presence" at the scene, which would be insufficient to support a conviction for conspiracy. United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005). In any event, "the jury is permitted to consider presence as a probative factor in determining whether the defendant knowingly and intentionally participated in a criminal scheme." Id. There was also testimony that Noussy reduced the amounts of the money orders he needed in order to avoid reporting the transactions, which indicates that he was trying to avoid drawing attention to the store because he knew it was trafficking in counterfeit goods.

5

Because the appellants acted in concert in running the store, a jury could infer there was a conspiratorial agreement and overt acts to support the conspiracy aspect of the charges.  See Guerra, 293 F.3d at 1285.  Viewing the evidence in the light most favorable to the government, we therefore conclude that there was sufficient evidence in support of each of the convictions.

**AFFIRMED.**