[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11542
Non-Argument Calendar

_____

D.C. Docket No. 8:12-cr-00084-VMC-MAP-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES CRAIG JENKINS, JR.,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 7, 2014)

Before PRYOR, JORDAN and FAY, Circuit Judges.

PER CURIAM:

James Craig Jenkins, Jr. appeals his conviction for conspiracy to possess

with intent to distribute five kilograms or more of cocaine.  See 21 U.S.C.

§§ 841(a)(1), (b)(1)(A), 846.  Jenkins challenges two evidentiary rulings and the sufficiency of the evidence to support his conviction.  We affirm.

The district court did not violate Jenkins's constitutional right to cross-examine Officer James Emmerson, an undercover officer who led the investigation of the conspiracy.  The district court allowed Jenkins to impeach Emmerson through cross-examination, as guaranteed by the Confrontation Clause of the Sixth Amendment, in a way that enabled Jenkins to "expose[] the jury to facts sufficient to evaluate [Emmerson's] credibility . . . and . . . to establish a record from which [Jenkins] . . . [could] argue . . . [that Emmerson] [was a] less than reliable" witness. United States v. Pacchioli, 718 F.3d 1294, 1304 (11th Cir. 2013) (quoting United States v. Baptista–Rodriguez, 17 F.3d 1354, 1371 (11th Cir. 1994)).  Jenkins elicited from Emmerson that he had relied on a confidential informant, Lalo Garza, to target Jenkins; Garza had "an interest in making [Emmerson] happy" because Garza could have an existing sentence reduced and obtain future assistance; Garza recorded about 88 of his telephone conversations with Jenkins, but they also had some unrecorded conversations; Emmerson was uncertain what quantity of cocaine Jenkins intended to buy until they met in a hotel room; Jenkins acquired significantly less cocaine than he first offered to buy; and Jenkins said repeatedly that he could pay for only two kilograms of cocaine.  Based on this information, the jury could evaluate Garza's motives for cooperating with Emmerson, the

2

reliability of Emmerson's testimony about his investigation and the transaction, and Jenkins's argument that he conspired to possess with intent to distribute two kilograms of cocaine and was pressured to accept additional kilograms on consignment. Jenkins's cross-examination was not limited like the defendant in United States v. Baptista–Rodriguez, 17 F.3d 1354 (11th Cir. 1994), who was prevented from eliciting from a key witness information vital to his defense, id. at 1366–67, or the defendant in United States v. Lankford, 955 F.2d 1545 (11th Cir. 1992), who was prohibited from exposing a key witness's motive for cooperating with the government, id. at 1548–49. Emmerson testified about eight telephone calls that he had with Jenkins, and on cross-examination, Jenkins questioned Emmerson about some telephone calls between Garza and Jenkins in which Jenkins said he could afford to buy only two kilograms of cocaine. And after Emmerson testified on redirect examination about two conversations between himself, Jenkins, and Garza, Jenkins questioned Emmerson about whether Jenkins agreed to purchase only two kilograms of cocaine and whether he was pressured to accept more cocaine. Jenkins argues that he was entitled to ask Emmerson about more telephone calls between Garza and Jenkins, but Jenkins fails to explain what facts he intended to elicit from Emmerson. Additional information about Jenkins's limited resources or Garza's motives would have been cumulative. See United States v. Maxwell, 579 F.3d 1282, 1296 (11th Cir. 2009).

3

The district court also did not abuse its discretion by admitting Emmerson's testimony that Jenkins met with leaders of the drug cartel. Jenkins argues that Emmerson's testimony was hearsay, but his testimony was not offered to prove that Jenkins met with or sold drugs for the cartel. See Fed. R. Evid. 801(c). Emmerson testified about the drug cartel to explain how he learned about and why he decided to investigate Jenkins. See United States v. Tokars, 95 F.3d 1520, 1535–36 (11th Cir. 1996). Emmerson's testimony was not hearsay.

Sufficient evidence supports Jenkins's conviction. We need not address whether Jenkins conspired to possess with intent to distribute cocaine because, as he states in his opening brief, he "freely conceded [at trial that] he was guilty of conspiracy with intent to distribute cocaine." At trial, Jenkins argued that he conspired to possess two kilograms of cocaine, but ample evidence supports the jury's finding that Jenkins intended to possess five or more kilograms of cocaine. See United States v. Hernandez, 433 F.3d 1328, 1335 (11th Cir. 2005). The government introduced audio recordings of telephone calls in which Jenkins agreed to pay for two kilograms, asked for an additional five kilograms on consignment, and boasted that he could distribute 12 kilograms of cocaine in one day; a video recording of Emmerson's transaction with Jenkins in which he observed seven kilograms of cocaine and tested one kilogram package to determine its quality; and Jenkins's statement to law enforcement that he had asked for 12

kilograms of cocaine, but agreed to purchase two kilograms of cocaine and to be fronted an additional three or five kilograms of cocaine.  Jenkins argues, for the first time on appeal, that the "evidence demonstrated only that he [had] buy-sell relationships" with Christopher Carlton and a person referred to as "Stick," but Jenkins waived this argument by admitting that he was guilty of conspiracy.  See United States v. Olano, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777 (1993).

We **AFFIRM** Jenkins's conviction.