[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10880
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cr-00434-JSM-TBM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

YUGOOL PERSAUD,
DESMOND WILSON,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(March 20, 2015)

Before MARCUS, JORDAN, and BLACK, Circuit Judges.

PER CURIAM:

Yugool Persaud and Desmond Wilson appeal their convictions for conspiracy to possess marijuana with intent to distribute and aiding and abetting possession of marijuana with intent to distribute.  They both raise three issues on appeal: (1) that the Maritime Drug Law Enforcement Act ("MDLEA")—46 U.S.C. §§ 70501 et seq.—is unconstitutional as applied to their case because the government established no jurisdictional nexus; (2) that the district court violated their Fifth and Sixth Amendment rights to a jury trial when it made a pretrial determination of jurisdiction under the MDLEA; and (3) that their Sixth Amendment Confrontation Clause rights were violated when the district court admitted a certification from the United States Department of State confirming MDLEA jurisdiction and a vessel registration certificate.

Mr. Wilson raises three additional issues: (1) that the district court erroneously denied his motion to dismiss because the MDLEA does not include a conspiracy offense or an offense for aiding and abetting possession of controlled substances; (2) that the court abused its discretion when it excluded exculpatory portions of his statement to a law enforcement agent; and (3) that the court erroneously denied his motion for acquittal on both charges because *Rosemond v. United States*, 134 S. Ct. 1240 (2014), requires that the government prove that he knew the vessel would be picking up marijuana at a point when he was able to exit the conspiracy.

After a careful review of the parties' briefs and the record, we affirm.

## I

In August of 2010, members of a United States Coast Guard law enforcement team were aboard the *Wave Knight*, a British naval ship. The Coast Guard spotted a fishing vessel, *Miss Tiffany*, about 90 nautical miles north of Venezuela. *Miss Tiffany* had markings on its side stating, "Black River, Jamaica," but suspiciously was not flying a flag identifying the country to which it belonged.

A British naval officer attempted radio contact with the crew aboard *Miss Tiffany*. Prior to attempting contact, *Miss Tiffany* was headed in a southeast direction. Following the attempted contact, the Coast Guard noticed that *Miss Tiffany* altered its course, increased in speed, and began driving in a circle, appearing to hide its portside from view. Eventually, the Coast Guard saw crewmembers of *Miss Tiffany* dumping packages off the vessel's portside into the ocean. Two Coast Guard teams left the *Wave Knight* in separate boats—one headed toward *Miss Tiffany* and the other headed toward the packages. The Coast Guard officers who approached *Miss Tiffany* saw a few crewmembers looking dejected with their faces in their hands. Mr. Wilson was at the stern of the boat at the time. Mr. Persaud came from the pilothouse and identified himself as the master. Mr. Persaud told the approaching Coast Guard officer that they were on a fishing voyage to buy red snapper from Guyana. This was odd to the officer;

Jamaican waters contain red snapper, and Guyana was more than 1,000 miles away.

The Coast Guard officers who approached the packages could smell the odor of marijuana from approximately 15 to 20 yards away. Upon inspection, the packages were bales of marijuana, tied together and weighed down with marine batteries and homemade anchors. The Coast Guard ultimately retrieved 55 bales of marijuana weighing more than 1200 kilograms.

Five of the seven crewmembers were Jamaican, and they were turned over, along with one bale of marijuana, to the Jamaican authorities. Messrs. Persaud and Wilson were from Guyana, and Jamaica waived jurisdiction. The Coast Guard brought Messrs. Persaud and Wilson back to a Coast Guard station in the United States.

Mr. Wilson agreed to speak with a federal agent after being advised of his *Miranda* rights. At first, Mr. Wilson told the agent that he was hired to operate the boat for three hours each day. He had accompanied the crew on an earlier nine-day trip transporting coconut oil from Guyana to Jamaica. Mr. Wilson said that he lived at the boat owner's farmhouse in Jamaica while the boat was being repaired. When the Coast Guard arrived, the boat had been at sea for ten days and was only halfway to South America to buy fish.

4

The federal agent asked Mr. Wilson why the return trip was taking twice as long as the initial voyage. Mr. Wilson admitted that the boat stopped in the middle of the ocean for four or five days waiting for cargo. Two vessels pulled up, and their Jamaican crewmembers started throwing packages onboard *Miss Tiffany*. Mr. Wilson told the federal agent that he noticed that the bags smelled like weed. He also admitted to helping *Miss Tiffany*'s other crewmembers place the bags in the boat's fishhold. One of the Jamaican crewmembers came aboard *Miss Tiffany*, and they traveled toward South America. One day, Mr. Wilson had been sleeping and woke up to see the Coast Guard approaching and the crewmembers dumping the marijuana into the ocean.

A federal grand jury indicted Messrs. Persaud and Wilson for conspiracy to possess marijuana with intent to distribute, in violation of 46 U.S.C. §§ 70503(a), 70506(a) & (b), and 21 U.S.C. § 960(b)(1)(G), and aiding and abetting possession of marijuana with intent to distribute, in violation of 46 U.S.C. §§ 70503(a), 70506(a), 21 U.S.C. § 960(b)(1)(G), and 18 U.S.C. § 2. After a joint trial, a jury found them both guilty on all charges. The district court sentenced Mr. Persaud to 132 months' imprisonment and Mr. Wilson to 120 months' imprisonment.

## II

We review *de novo* a district court's interpretation and application of statutory provisions, including those regarding its subject-matter jurisdiction. *See*

*United States v. Campbell*, 743 F.3d 802, 805 (11th Cir. 2014).  We review constitutional objections *de novo*.  *See id.*  "Under the prior precedent rule, we are bound to follow a prior binding precedent unless and until it is overruled by this court en banc or by the Supreme Court."  *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) (internal quotation marks and citation omitted).

### III

Congress enacted the MDLEA under its Felonies Clause authority—*see* U.S. Const., Art. I, § 8, cl. 10—to define and punish felonies committed on the high seas.  *See Campbell*, 743 F.3d at 805.  The MDLEA prohibits knowingly or intentionally possessing a controlled substance with the intent to distribute it onboard any vessel subject to the jurisdiction of the United States.  *See* 46 U.S.C. § 70503(a).  A vessel is subject to the jurisdiction of the United States if, among other grounds, it is registered in a foreign nation and that nation has consented to, or waived any objection to, the enforcement of United States law.  *See* § 70502(c)(1)(C).

First, Messrs. Persaud and Wilson argue that the MDLEA was unconstitutionally applied to their case and that the government failed to establish a jurisdictional nexus to the United States.  We recently examined the constitutionality of the MDLEA in *Campbell* and concluded that Congress did not exceed its authority under the Felonies Clause when it enacted the MDLEA.  *See*

*Campbell*, 743 F.3d at 810.  We also recognized that the conduct proscribed by the Act need not have a nexus to the United States because universal and protective principles support its extraterritorial reach.  *See id.* (citing cases).  Here, the district court received a State Department certification stating that Jamaica waived primary jurisdiction over Messrs. Persaud and Wilson.  Therefore, the district court did not err in concluding that the MDLEA gave it jurisdiction over the defendants, and their argument to the contrary is without merit.

The defendants' second argument—that a judicial determination of jurisdiction under the MDLEA violated their Fifth and Sixth Amendment rights to a jury trial on that element—also fails.  Our prior precedent establishes that the jurisdictional determination under the MDLEA may be resolved by the district court without violating the defendant's constitutional jury trial rights.  *See United States v. Tinoco*, 304 F.3d 1088, 1111–12 (11th Cir. 2002).  Further, the MDLEA provides that the United States' jurisdiction over a vessel is not an element of the offense and that jurisdictional issues are preliminary questions of law to be resolved by the district court.  *See* 46 U.S.C. § 70504(a).  "[T]he MDLEA jurisdictional requirement does not raise factual questions that traditionally would have been treated as elements of an offense under the common law." *Tinoco*, 304 F.3d at 1108.  Instead, the requirement is intended to act as a diplomatic courtesy, and it does not bear on the individual defendant's guilt.  *See id.* at 1108–09.  Thus,

7

the district court did not err by making a pretrial determination that it had jurisdiction under the MDLEA.

## IV

The defendants next argue that the district court violated their Sixth Amendment Confrontation Clause rights when it admitted multiple State Department certifications to establish MDLEA jurisdiction.  The Sixth Amendment's Confrontation Clause prevents the admission of a witness testimonial statement when the witness does not appear at trial unless the witness is unavailable to testify and the defendant had a prior opportunity to cross examine the witness.  *See Campbell*, 743 F.3d at 806.

The record shows that only one State Department certification was admitted during a pretrial determination of jurisdiction.  The defendants preserved their Confrontation Clause objection regarding this certification, and we normally review *de novo* whether hearsay statements are testimonial.  *See United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010).  Our prior precedent, however, holds that "[t]he Confrontation Clause does not bar the admission of hearsay to make a pretrial determination of jurisdiction when that hearsay does not pertain to an element of the offense."  *Campbell*, 743 F.3d at 806.  Thus, a State Department's certification under the MDLEA, admitted to establish subject-matter

8

jurisdiction during a pretrial hearing, does not violate the Confrontation Clause. *See id.* at 809.

It is unclear what other certificates the defendants might be addressing; they did not revisit the issue in a reply brief. The government believes that the defendants may be referring to the Coast Guard's vessel registration certificate. As that possible issue was not plainly raised in the defendants' initial briefs, it is properly considered abandoned on appeal. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

Even if the issue were not abandoned, however, the defendants did not object to—and thus did not preserve—the admission of the vessel registration certificate during the trial on Confrontation Clause grounds. Thus, any claim with regard to the vessel registration certificate is reviewed, at best, for plain error. *See United States v. Charles*, 722 F.3d 1319, 1322 (11th Cir. 2013). To show plain error, the appellant must raise an error that is plain and that affects substantial rights before we will exercise our discretion to correct an error that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Jones*, 743 F.3d 826, 829 (11th Cir. 2014). An error is plain when it contradicts precedent from the Supreme Court or the Eleventh Circuit directly resolving the issue. *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

9

The defendants have not cited to any Eleventh Circuit or Supreme Court cases holding that the Coast Guard's vessel registration certification is testimonial hearsay.  Thus, the district court's admission of the vessel registration certification was not plain error.  *See id.*

## V

Next, Mr. Wilson argues that the district court erroneously denied his motion to dismiss because the MDLEA does not include a conspiracy offense or an offense for aiding and abetting possession of controlled substances.  He argues that his convictions should be vacated because the indictment cited no MDLEA provision criminalizing these offenses.

We normally review the sufficiency of an indictment *de novo*.  *See United States v. Pena*, 684 F.3d 1137, 1147 (11th Cir. 2012).  When a challenge to the indictment's inadequacy is raised for the first time on appeal, however, we will find the indictment adequate unless "it is so defective that it does not, by any reasonable calculation, charge an offense for which the defendant [was] convicted."  *Id.*  Because his motion to dismiss addressed the conspiracy charge, we review Mr. Wilson's sufficiency claim for that charge *de novo*.  And because the standard of review makes no difference, we will also review *de novo* the challenge to the aiding and abetting charge.

10

"Substantively, for an indictment to be sufficient, it must: (1) present the essential elements of the charged offense; (2) provide the accused notice of the charge he must defend against; and (3) enable the accused to rely upon any judgment under the indictment for double jeopardy purposes." *Id.* (citing *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002)).  A reference to the statutory language upon which the charge was based "adequately informs the defendant of the charge." *Id.*

Under the MDLEA, a conspiracy to violate § 70503 is subject to the same penalties as a violation of § 70503.  *See* 46 U.S.C. § 70506(b).  We have concluded that similar language in a prior codification of the MDLEA created a conspiracy offense under the MDLEA.  *See Tinoco*, 304 F.3d at 1096 n.10 (citing 46 U.S.C. app. § 1903(j) (2002)).  A person who aids or abets an offense against the United States is punishable as a principal, *see* 18 U.S.C. § 2(a), and § 2 of Title 18 applies to all federal criminal statutes.  *See United States v. Walser*, 3 F.3d 380, 388 (11th Cir. 1993).

Here, the indictment alleged that Mr. Wilson conspired to possess marijuana with intent to distribute and that he aided and abetted Mr. Persaud in possessing marijuana with intent to distribute.  It cited 46 U.S.C. §§ 70503(a), 70506(b) and 18 U.S.C. § 2 as statutes supporting these charges.  Its reference to these statutes adequately informed Mr. Wilson of the legal basis for the charges.  *See Pena*, 684

11

F.3d at 1147. Thus, the indictment did not defectively charge Mr. Wilson with conspiracy to possess marijuana or aiding and abetting possession of marijuana, and the district court did not err by denying his motion to dismiss.

## VI

Mr. Wilson argues that the district court abused its discretion under the rule of completeness when it prohibited him from cross examining a federal agent about an alleged conversation he had with Mr. Persaud while aboard the *Miss Tiffany*. Mr. Wilson argues that he told the agent that he had asked Mr. Persaud why the boat was stopping in the middle of the ocean. He told the agent that Mr. Persaud responded to him, "You'll see." Mr. Wilson wanted to cross examine the agent about this alleged conversation as proof that Mr. Wilson did not know at the outset of the trip that *Miss Tiffany* would be picking up marijuana. Mr. Wilson argued that the agent's testimony on direct examination left the jury with the impression that Mr. Wilson never denied knowing that the boat would pick up marijuana prior to setting sail. He wanted to cross examine the agent about this alleged conversation to clarify the agent's testimony.

Mr. Wilson asked the district court during a bench conference for permission to cross examine the federal agent about the conversation, including Mr. Persaud's alleged response. Mr. Persaud's attorney objected to Mr. Wilson's request, arguing that *Bruton v. United States*, 391 U.S. 123 (1968), prohibited Mr. Wilson

12

from introducing into evidence what he alleged Mr. Persaud told him, because it was a codefendant's statement implicating Mr. Persaud while simultaneously denying Mr. Persaud his constitutionally-protected Confrontation Clause rights. The government also objected to Mr. Wilson's request, arguing that the conversation had already been ruled inadmissible under a prior motion. The district court ruled that Mr. Wilson could not cross examine the agent about any statements Mr. Wilson alleged Mr. Persaud made, but Mr. Wilson could ask about his own statements.

On appeal, Mr. Wilson argues that the district court's ruling was erroneous because Mr. Persaud's alleged identity could have been redacted to refer to "an unidentified crew member." He also argues that the district court's ruling was much broader and prohibited him from asking about the conversation entirely, even Mr. Wilson's alleged question about why the boat was stopping.

A district court has broad discretion in determining the admissibility of evidence. *See United States v. Range*, 94 F.3d 614, 620 (11th Cir. 1996). We therefore review the district court's evidentiary decisions for a clear abuse of discretion. *See Tinoco*, 304 F.3d at 1119. Under the rule of completeness, when a party introduces a writing or recording, the adverse party may require the introduction of any excluded portion of that writing or recording or another writing or recording that should be considered at the same time. Fed. R. Evid. 106.

13

Pursuant to Federal Rule of Evidence 611(a), the rule of completeness has been extended to oral testimony. *See United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005).

A defendant's Sixth Amendment Confrontation Clause right, however, is violated when a facially incriminating confession of a non-testifying codefendant is admitted during their joint trial. *See United States v. Turner*, 474 F.3d 1265, 1277 (11th Cir. 2007). Accordingly, a codefendant's *Bruton* right may be violated when a defendant is permitted to cross-examine a government witness about a redacted portion of his own statement to the witness, if that statement implicates the codefendant. *See Range*, 94 F.3d at 620. When the court redacts a statement to resolve a potential *Bruton* problem, "the rule of completeness is violated only when the statement in its edited form . . . effectively distorts the meaning of the statement or excludes information substantially exculpatory of the nontestifying defendant." *Id.* (internal quotation marks and citations omitted).

Here, the district court permitted Mr. Wilson to inquire about a question that he allegedly asked Mr. Persaud—why the boat was stopping—but ruled that he could not ask any question that "call[ed] for an answer from [Mr.] Persaud." This ruling did not necessarily distort the meaning of Mr. Wilson's question, and Mr. Wilson was free to argue that his asking the question suggested that he did not know about the marijuana deal in advance. The ruling also did not exclude

14

substantially exculpatory evidence.    First, Mr. Wilson was permitted to cross

examine the agent about his own question about why the boat was stopping.

Second, Mr. Wilson told the agent that he helped load the packages of marijuana

onto the boat, which significantly reduced the exculpatory value of his statement.

Thus, the district court did not violate the rule of completeness and acted within its

broad discretion by excluding Mr. Persaud's alleged response to Mr. Wilson's

question.  *See id.*

## VII

Finally, Mr. Wilson argues that the evidence at trial was insufficient to

convict him for aiding and abetting the possession of, or conspiring to possess,

marijuana with the intent to distribute and that the trial court erroneously denied

his motion for acquittal on sufficiency of the evidence grounds.  On appeal, he

argues that the United States Supreme Court's decision in *Rosemond v. United*

*States*, 134 S. Ct. 1240 (2014), required the government to show that he had

knowledge of the plan to pick up the marijuana prior to sailing on *Miss Tiffany* and

that he had a reasonable opportunity to escape the offense once he knew about it.

He argues that the government presented no evidence showing that he knew about

the marijuana scheme before the drugs were delivered to *Miss Tiffany* and that he

had no opportunity to leave after the delivery because the boat was already at sea.

Further, he argues that the government erred when it argued that he could have

joined the conspiracy at the moment he agreed to help load the marijuana on the boat.

We normally review the denial of a motion for acquittal *de novo*. *See United States v. Hernandez*, 433 F.3d 1328, 1332 (11th Cir. 2005). We review the sufficiency of the evidence supporting a conviction *de novo*. *Id.* Given that a jury found Mr. Wilson guilty, we make all factual and credibility inferences in favor of the government. *See United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000).

Mr. Wilson arguably did not make his *Rosemond*-related arguments—knowledge of the marijuana deal prior to sailing on *Miss Tiffany* and a subsequent opportunity to escape after the marijuana was delivered—to the district court in his motion for acquittal. He argued that the government did not present sufficient evidence on the conspiracy charge to show that he was in agreement with anyone and that on the "voluntarily and willfully knowingly possessed marijuana with the intention to distribute [charge], there's just no evidence to support it." But he did argue to the jury in closing that he had no knowledge prior to Miss Tiffany's departure that the marijuana would be delivered and that he had no place to go once it had been. As the standard of review will not change our resolution of Mr. Wilson's claim, we will assume without deciding that he sufficiently preserved his arguments in the district court, and we will review them *de novo*.

Evidence is sufficient to support a conviction if a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt. *See United States v. Diaz Boyzo*, 432 F.3d 1264, 1269 (11th Cir. 2005). The evidence does not have to exclude every reasonable hypothesis of innocence. *See Hernandez*, 433 F.3d at 1334-35. The jury may choose between two reasonable constructions of the evidence. *Id.* at 1334.

To demonstrate a conspiracy, the government must prove that two or more people entered into an agreement to commit an offense and that the defendant knowingly and voluntarily participated in the agreement. *See Tinoco*, 304 F.3d at 1122. This burden can be met through circumstantial evidence. *See id.* We have previously held that the defendant's presence on a vessel—though not determinative—is a material factor supporting his participation in a conspiracy relating to that vessel, especially when the vessel contains a high value of contraband. *See id.* at 1122-23 (concluding "it is highly improbable that drug smugglers would allow an outsider on board a vessel filled with millions of dollars worth of contraband").

Possession of a controlled substance can be actual or constructive and also can be proven through the use of circumstantial evidence. *See id.* at 1123. A defendant constructively possesses a controlled substance if he exercises some measure of control over the contraband, either exclusively or in association with

17

others.  *See id.*  The jury can infer a defendant's intent to distribute if the government seizes a large quantity of controlled substances.  *See id.*

Further, due to the similar factual circumstances often found in cases like the present one,

> we have held that the following factors should be considered in determining whether a jury could reasonably conclude that a defendant found on the vessel was guilty of the drug conspiracy and possession charges:
>
> "(1) probable length of the voyage, (2) the size of the contraband shipment, (3) the necessarily close relationship between captain and crew, (4) the obviousness of the contraband, and (5) other factors, such as suspicious behavior or diversionary maneuvers before apprehension, attempts to flee, inculpatory statements made after apprehension, witnessed participation of the crew, and the absence of supplies or equipment necessary to the vessel's intended use."

*Id.* (quoting *United States v. Garante-Vergara*, 942 F.2d 1543, 1547 (11th Cir. 1991)).  We have previously held that once the government shows that a large quantity of contraband was on the vessel, "the government's remaining burden of showing that the crew knowingly participated in the drug smuggling operation is relatively light."  *Id.* (stating that the government need prove only one additional factor to meet its burden) (internal quotation marks and citation omitted).

To show that a defendant aided and abetted an offense, the government must demonstrate that: (1) someone else committed the substantive offense; (2) the defendant committed an act which contributed to and furthered the offense; and (3)

18

the defendant intended to aid in the commission of the offense. *See United States v. Camacho*, 233 F.3d 1308, 1317 (11th Cir. 2000).

Here, the government produced sufficient evidence for a reasonable jury to convict Mr. Wilson of the conspiracy and aiding and abetting charges. The government showed that more than 1,200 kilograms of marijuana were retrieved from the encounter with *Miss Tiffany*. Thus, it had to prove only one other factor to provide sufficient evidence of Mr. Wilson's knowledge about the marijuana. *See Tinoco*, 304 F.3d at 1123. The government demonstrated that *Miss Tiffany* made evasive maneuvers after the Coast Guard contacted her crew. Further, Mr. Wilson admitted to the federal agent at the Coast Guard station on shore that he helped pull the marijuana bales onto the boat after he noticed that they smelled like marijuana. Thus, the government demonstrated evidence of multiple factors that supported both Mr. Wilson's conspiracy and aiding and abetting offenses. Mr. Wilson's statements to the agent also provided sufficient evidence that he aided and abetted the marijuana possession, as he admitted to helping haul the bales onto the boat despite noticing their incriminating odor. *See Camacho*, 233 F.3d at 1317.

Mr. Wilson's *Rosemond* arguments are unavailing in this context. The Supreme Court in *Rosemond* considered what the government must show to convict a defendant of aiding or abetting another person's use or carrying of a firearm during a crime of violence or drug trafficking in violation of 18 U.S.C. §

19

924(c).  *See Rosemond*, 134 S. Ct. at 1243.  The Supreme Court noted that a § 924(c) offense consists of two actions: the use or carrying of a firearm and a qualifying violent or drug trafficking offense.  *See id.* at 1245.  Thus, the Court determined that the intent element of aiding and abetting a § 924(c) offense can be met only when the defendant had advance knowledge of both the qualifying offense and that an accomplice would carry a firearm at a time when the defendant could opt to leave the crime.  *See id.* at 1249-50.

Thus, *Rosemond* did not involve a factual scenario similar to the present one, and it did not hold that its ruling applied beyond aiding or abetting § 924(c) offenses.  Neither the Supreme Court nor this Circuit has applied *Rosemond* in a context similar to the present case.  Thus, under our precedent, the district court did not err in denying Mr. Wilson's motion for acquittal.  The government introduced sufficient evidence here for a reasonable trier of fact to find Mr. Wilson guilty beyond a reasonable doubt.

## VIII

Accordingly, we affirm Mr. Persaud's and Mr. Wilson's convictions.

**AFFIRMED.**