[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 01-16067
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 03, 2002
THOMAS K. KAHN
CLERK

D.C. Docket No. 01-00053-CR-1-1-ODE

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDINAND WOODRUFF,
a.k.a. Frederick Woodruff,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Georgia

_____

**(July 3, 2002)**

Before BIRCH, MARCUS and WILSON, Circuit Judges.

MARCUS, Circuit Judge:

Fredinand Woodruff appeals his convictions and sentences for bank robbery, in

violation of 18 U.S.C. § 2113(a), two counts of armed robbery, in violation of 18 U.S.C.

§ 1951, also known as the Hobbs Act, and two counts of using or carrying a firearm during the commission of a violent crime, in violation of 18 U.S.C. § 924(c).  On appeal, Woodruff argues that (1) the indictment's Hobbs Act charges were defective because they failed to allege criminal intent; (2) there was insufficient evidence of a nexus between the robberies and interstate commerce to warrant federal jurisdiction under the Hobbs Act; (3) there was insufficient evidence to prove that the weapon used during the robberies was in fact a firearm capable of expelling a projectile by the action of an explosive; and (4) in light of Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the district court erred by applying the 25-year statutory minimum under § 924(c)(1)(C)(i) because the indictment failed to allege that it was a second or subsequent conviction under § 924(c).[1]

---

[1]In addition to these claims, which are discussed at some length below, we are unpersuaded by Woodruff's argument that the district court abused its discretion by refusing to grant a new trial on the basis of violations of Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), and Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). See, e.g., United States v. Fernandez, 136 F.3d 1434, 1438 (11th Cir. 1998) (reviewing district court's denial of a motion for new trial on the basis of a Brady violation for abuse of discretion).

To succeed on a Giglio challenge, the defendant must demonstrate that the prosecutor "knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." United States v. Dickerson, 248 F.3d 1036, 1041 (11th Cir. 2001), petition for cert. filed June 25, 2001 (No. 00-10864) (quotations omitted). To establish a Brady violation, the defendant must show (1) that the government possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence and could not obtain the evidence with reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different. United States v. Meros, 866 F.2d 1304, 1308 (11th Cir. 1989).

Upon thorough review of the record and careful consideration of the parties' briefs, we find no reversible error and affirm Woodruff's conviction and sentence.

I.

On January 16, 2001, Woodruff was charged with robbing a Bank of America branch in Atlanta, in violation of 18 U.S.C. § 2113 (Count 1); two counts of armed robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951 (Counts 2 and 4); and counts of using and carrying a firearm during the commission of the robberies, in violation of 18 U.S.C. § 924(c) (Counts 3 and 5). Of particular relevance to this appeal, Count 2 alleged that, on September 20, 2000, Woodruff

> did unlawfully, obstruct, delay, and affect commerce, and the movement of articles and commodities in such commerce, by robbery in that [he] did unlawfully take and obtain personal property of . . . Discount Auto Parts, consisting of cash, from the person of and in the presence of an employee of the Discount Auto Parts, against his will, by means of actual and threatened force, violence, and fear of immediate injury to his person, in violation of [18 U.S.C. § 1951].

Count 3 alleged that Woodruff "did knowingly and willfully use and carry a firearm, that is, a handgun, during and in relation to the commission of [the crime alleged in

_____

Here, Woodruff has not demonstrated that a witness perjured herself, or that the prosecutor failed to correct perjured testimony. Accordingly, he has not established a <u>Giglio</u> violation. Woodruff also has not shown that his rights were violated under <u>Brady</u> since the alleged favorable evidence, if disclosed to him, would not have changed the outcome of his trial. Numerous witnesses identified Woodruff as the robber in all three incidents through surveillance photos, police photo spreads, and in-court identification. We can find no abuse of the district court's discretion on this basis.

3

Count 2], and in doing so did brandish said firearm, in violation of [18 U.S.C. § 924(c)]." Count 4, which was similar to Count 2, alleged that on September 26, 2000, Woodruff

> did unlawfully, obstruct, delay, and affect commerce, and the movement of articles and commodities in such commerce, by robbery in that [he] did unlawfully take and obtain personal property of . . . Pawn Mart, consisting of cash, from the person of and in the presence of an employee of the Pawn Mart, against his will, by means of actual and threatened force, violence, and fear of immediate injury to his person, in violation of [18 U.S.C. § 1951].

Count 5, like Count 3, alleged that Woodruff "did knowingly and willfully use and carry a firearm, that is, a handgun, during and in relation to the commission of [the crime alleged in Count 4], and in doing so did brandish said firearm, in violation of [18 U.S.C. § 924(c)]."

Before trial, Woodruff moved to dismiss Counts 2 and 4, arguing that these counts did not allege criminal intent as an element of the offense, and that acting "knowingly" is an element of an offense under the Hobbs Act. Woodruff also moved to dismiss counts 3 and 5 because they were derivative of Counts 2 and 4 and would therefore have to be dismissed if the Hobbs Act counts were removed from the case. The district court denied Woodruff's motion, concluding that the words "force, violence and intimidation," which appear in both the Hobbs Act and the charges in the

4

indictment, necessarily implied an allegation that the defendant acted knowingly and willfully.

The evidence presented at trial established that on September 8, 2000, Woodruff entered a Bank of America branch in Atlanta and asked the teller to change a hundred dollar bill. As the teller opened her drawer, Woodruff leaned over the counter, grabbed all the money that he could from the teller drawer and left the bank with approximately $4,300.

Subsequently, on September 20, 2000, Woodruff approached the counter at a Discount Auto Parts store in Atlanta and put a few items on the counter. The store clerk testified that she looked down and noticed that Woodruff had a gun. When she jumped back from the counter, Woodruff said that he would shoot her if she did not "come right back" to the counter. Woodruff ordered her to put the money from the register and the items he had placed on the counter into a bag. Before leaving, he told her that if she said anything before he left he would kill her.

Less than a week later, on September 26, 2000, Woodruff entered the Pawn Mart in Atlanta, approached one of its employees from behind, and struck him on the back of the head with the barrel of his gun. Woodruff then told everyone to get on the floor and ordered the employee he had hit in the head to open the cash register. After the register was opened, Woodruff ordered the employee to open the safe in the back.

When the employee told Woodruff that he was unable to open the vault, Woodruff came over to another employee who was able to access the vault, kicked her in the face, and told her to open the vault. While she was lying face down on the floor, the defendant placed the gun to the back of her head and shouted, "Bitch, get your ass up and get back there and get that money." She complied, turning the money from the safe over to the defendant. Woodruff then gathered up the money from the cash register and from the vault and left the store.

At the close of the government's evidence, Woodruff moved for a judgment of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, arguing that the government failed to establish that the robberies at Discount Auto Parts and Pawn Mart affected interstate commerce, which is an essential element under the Hobbs Act. He also claimed that the government failed to prove that the item brandished during the robberies was actually a firearm. The district court denied the motion on both grounds. The jury found Woodruff guilty on all five counts.

At sentencing, Woodruff objected to the application of a 25 year statutory-minimum sentence for Count 5 because the government failed to allege in the indictment that it was a "second or subsequent conviction." Woodruff argued that because the second or subsequent conviction under § 924(c)(1)(C)(i) dramatically increased the minimum sentence he could receive, Apprendi required the government

6

to allege expressly in the indictment that the crime was a "second or subsequent" violation. The district court denied the motion finding that even if the words "second or subsequent" should have been included in the indictment, the error was harmless beyond a reasonable doubt because the jury convicted Woodruff on two separate counts under § 924(c), necessarily making one of them "second or subsequent."

The district court sentenced Woodruff to 120 months' imprisonment as to Count 1; 216 months as to Counts 2 and 4, to run concurrently with each other and Count 1; 84 months as to Count 3, to run consecutively to Counts 1, 2 and 3; and 300 months as to Count 5, to run consecutively to the other counts. Additionally, the district court sentenced Woodruff to a five-year term of supervised release and ordered him to pay $12,438 in restitution. This appeal followed.

II.

We review de novo the legal question of whether an indictment sufficiently alleges a statutorily proscribed offense. See United States v. Steele, 178 F.3d 1230, 1233 (11th Cir. 1999). We also review a challenge to the sufficiency of the evidence de novo, resolving all reasonable inferences from the evidence in favor of the jury's verdict. See United States v. Rudisill, 187 F.3d 1260, 1267 (11th Cir. 1999). The evidence is sufficient where a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt. See United

States v. Lluesma, 45 F.3d 408, 409-10 (11th Cir. 1995). Because Woodruff raised his Apprendi argument at sentencing, we review his claim de novo, but will reverse only for harmful error. See United States v. Sanchez, 269 F.3d 1250, 1272 (11th Cir. 2001)(en banc), cert. denied, 122 S. Ct. 1327, 152 L. Ed. 2d 234 (2002).

## A.

Woodruff first argues that the indictment was fatally infirm because it failed to allege criminal intent, which is a material element under the Hobbs Act. By now, it is axiomatic that an indictment is sufficient if it "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." Steele, 178 F.3d at 1233-34 (quotations omitted); see also Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907, 41 L. Ed. 2d 590 (1974) ("[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.").

As an initial matter, the language of the Hobbs Act imposes criminal liability on anyone who "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . or commits or

8

threatens physical violence to any person or property in furtherance of a plan or purpose" to do so. 18 U.S.C. § 1951(a). The Act defines "robbery" as "the unlawful taking or obtaining of personal property from [a] person . . . against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1). We have held that "the only mens rea required for a Hobbs Act robbery conviction is that the offense be committed knowingly." United States v. Gray, 260 F.3d 1267, 1283 (11th Cir. 2001), petition for cert. filed, (Jan. 14, 2002) (No. 01-8724); see also United States v. Thomas, 8 F.3d 1552, 1562 (11th Cir. 1993) ("The Hobbs Act definition of robbery does not seem to require a finding of specific intent whereas at common law robbery required such a finding.").

Woodruff contends, however, that the indictment filed against him was insufficient because it did not expressly state that the crime was committed "knowingly." Instead, the indictment alleged that Woodruff committed "robbery" and "did unlawfully take and obtain personal property . . . by means of actual and threatened force, violence, and fear of immediate injury." We recently addressed a claim involving a virtually identical indictment in Gray. In that case, the appellant argued that his Hobbs Act indictment failed to allege knowledge when it charged only that Gray "'unlawfully' interfered with commerce by taking property 'against [the victims'] will'

9

and 'by means of . . . force, violence, and fear of injury.'" Gray, 260 F.3d at 1283 (quoting indictment). In analyzing Gray's argument, we explained that "an indictment is not defective simply because it fails to allege mens rea so long as the allegation that the crime was committed with the requisite state of mind may be inferred from other allegations in the indictment." Id. Noting the clear and unambiguous language of the indictment, which tracked literally the wording of the Hobbs Act statute itself, see 18 U.S.C. § 1951, we held that the terms of the indictment "necessarily impart an allegation of knowledge." Gray, 260 F.3d at 1283.

Woodruff nevertheless attempts to distinguish Gray, noting that we reviewed the claim in that case under a particularly lenient standard because the appellant had not asserted his objection to the indictment before the district court. Because Gray's challenge to his indictment was raised for the first time on appeal, under controlling case law we were required to find the indictment sufficient "unless it [was] so defective that it [did] not, by any reasonable construction, charge an offense for which the defendant [was] convicted." United States v. Adams, 83 F.3d 1371, 1375 (11th Cir. 1996) (quotations omitted). While it is true that the standard of review was different in Gray, we can discern no logical, textual, or historical reason why our holding in that case should be limited somehow to circumstances in which the challenge to the indictment was not raised below. When we apply the unambiguous standard for

10

evaluating indictments set forth in Steele, this indictment sufficiently alleges knowledge because the very terms of the charge necessarily impart an allegation of knowledge.

By alleging that Woodruff "did unlawfully take and obtain personal property . . . by means of actual and threatened force, violence, and fear of immediate injury," the indictment not only tracked the language of the Hobbs Act, but also necessarily alerted the defendant that he was charged with having knowingly committed the crime. The Supreme Court has explained that "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" Hamling, 418 U.S. at 117, 94 S. Ct. at 2907 (quoting United States v. Carll, 105 U.S. 611, 612, 26 L. Ed. 1135 (1882)). The words of the Hobbs Act, set forth in Woodruff's indictment, clearly convey, without any uncertainty or ambiguity, an allegation that Woodruff acted knowingly.

We have long held that the term "knowingly" means that the act was performed voluntarily and intentionally, and not because of a mistake or accident. See United States v. Diecidue, 603 F.2d 535, 548 (5th Cir. 1979)[2]; 11th Cir. Pattern Jury

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

Instructions, Basic Crim. Instructions § 9.1; see also, e.g., United States v. Fern, 155 F.3d 1318, 1328 (11th Cir. 1998); Samples v. City of Atlanta, 916 F.2d 1548, 1550-51 & n.1 (11th Cir. 1990); United States v. Anderson, 872 F.2d 1508, 1517-18 & n.14 (11th Cir. 1989); United States v. Cebian, 774 F.2d 446, 447-48 (11th Cir. 1985). Indeed, it is difficult to imagine how a person could "unlawfully take and obtain personal property . . . by means of actual and threatened force, violence, and fear of immediate injury" by mistake or accident. The very use of the tools of violence (such as a firearm, a knife, a blunt instrument, or another weapon designed to harm or threaten bodily injury) for the specific purpose of taking the property of another can only be imagined as being done knowingly -- that is, voluntarily and intentionally. See generally United States v. Farmer, 73 F.3d 836, 842 (8th Cir. 1996) (explaining that Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person of another, and, in addition, it involves, by its nature, a substantial risk that physical force against the person of another may be used in the course of committing the offense"). Quite simply, we are satisfied, as we held in Gray, that if an indictment alleges that a defendant violated the Hobbs Act by unlawfully threatening or using force, violence, or fear of immediate injury to take property against the victim's will, the indictment necessarily imparts an allegation that the defendant acted knowingly.

12

Thus, even though the word "knowingly" did not appear in the indictment's description of the charged offense, the indictment alleged that Woodruff acted with the necessary mens rea. The indictment presented the essential elements of the charged offense, notified the accused of the charges to be defended against, and plainly enabled him to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense. So long as an indictment performs these essential functions, it is facially sufficient. See, e.g., Steele, 178 F.3d at 1233-34; see also Hamling, 418 U.S. at 117, 94 S. Ct. at 2907.[3] Woodruff's indictment was plainly sufficient.

## B.

We are not persuaded by any of Woodruff's other claims. Woodruff also argues that the district court erred by denying his motion for judgment of acquittal because the government failed to present sufficient evidence that the robberies affected interstate

---

[3]In reaching this conclusion, we reject Woodruff's contention that we should reverse his conviction in light of United States v. Du Bo, 186 F.3d 1177 (9th Cir. 1999). In Du Bo, the Ninth Circuit held that a Hobbs Act indictment was fatally flawed due to its failure to allege criminal intent when it charged the defendant "only with 'unlawfully' affecting commerce by the 'wrongful' use of force." 186 F.3d at 1179 (quoting indictment). The indictment in this case, which tracked the language of the Hobbs Act, was notably more thorough. Unlike in Du Bo, Woodruff's indictment does not leave us guessing about the nature of the charges. In short, Du Bo is not on all fours with this case. Moreover, we do not read Du Bo as requiring that a Hobbs Act indictment specifically include the word "knowingly." However, to the extent that the Ninth Circuit has imposed such a requirement, we have already reached a contrary result in Gray, and we are bound by our precedent.

13

commerce. Specifically, Woodruff says that the government failed to show a direct effect on interstate commerce as a result of his having taken money and property from Discount Auto Parts and the Pawn Mart, and that the government did not establish an effect on interstate commerce by means of the "depletion of assets" doctrine because the government did not show the amount of money taken from either establishment or what items were taken from Discount Auto Parts.[4]

The Hobbs Act criminalizes conduct that "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do." 18 U.S.C. § 1951(a). The Act "speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery, or physical violence. The Act outlaws such interference 'in any way or degree.'" Stirone v. United States, 361 U.S. 212, 215, 80 S. Ct. 270, 272, 4 L. Ed. 2d 252 (1960) (quoting 18 U.S.C. § 1951(a)); see also Gray, 260 F.3d at 1272 (noting that "the jurisdictional

---

[4]In making this argument, Woodruff urges us to reconsider our precedent and apply the standard announced by the Supreme Court in United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995), when it determined that the Gun-Free School Zones Act was unconstitutional. Under this standard, a criminal statute is constitutional only if the crime at issue "substantially affects" interstate commerce. We decline his invitation. We have unambiguously held that the Supreme Court's decision in Lopez does not affect the government's burden in establishing a minimal effect on interstate commerce to support a violation of the Hobbs Act. See United States v. Guerra, 164 F.3d 1358, 1360 (11th Cir. 1999) (holding that, since Lopez, the government still need establish only a minimal effect on interstate commerce to support a conviction under the Hobbs Act); see also Gray, 260 F.3d at 1272-73.

14

requirement [under the Hobbs Act] may be met simply by showing that the offense had a <u>minimal</u> effect on commerce") (emphasis added); <u>Guerra</u>, 164 F.3d at 1361 (recognizing that a mere showing of depletion of assets of a company involved in commerce is sufficient to establish the requisite minimal effect on commerce under the Hobbs Act); <u>United States v. Paredes</u>, 139 F.3d 840, 844-45 (11th Cir. 1998) (holding that Hobbs Act jurisdiction existed where the defendants robbed two local convenience stores of beer, cigarettes, and no more than $170 in cash).

Here, the evidence at trial established that Discount Auto Parts engaged in interstate commerce by purchasing various products and parts from outside the state of Georgia, namely from Florida and Mississippi. The evidence further demonstrated that the robbery resulted in a depletion of the business's assets. Although the government did not establish an exact amount of loss from the cash register, Woodruff took cash from the drawer and the items that he brought to the counter. The evidence presented, viewed in the light most favorable to the government, was sufficient for a reasonable fact finder to conclude that the robberies had a minimal effect on commerce. In short, the government introduced sufficient evidence to sustain Woodruff's Hobbs Act convictions.

We are likewise unconvinced by Woodruff's argument that the government presented insufficient evidence to establish that the weapon Woodruff used during the

robberies was in fact a firearm capable of expelling a projectile by the action of an explosive, within the meaning of 18 U.S.C. § 921(a)(3).[5] Contrary to Woodruff's claim, the government need not show to a scientific certainty that a defendant is carrying a device that fires projectiles by means of an explosive. See United States v. Hunt, 187 F.3d 1269, 1271 (11th Cir. 1999). Indeed, the government need not offer the gun itself into evidence or produce an expert witness to identify a "firearm." See id. The Government must present sufficient testimony, including the testimony of lay witnesses, in order to prove beyond a reasonable doubt that a defendant used, possessed or carried a "firearm" as that term is defined for purposes of § 924(c). In this case, although the firearm used by Woodruff was not in evidence, the jury heard testimony about the weapon from three of the victims and viewed photographic evidence depicting the gun. Our review of this record satisfies us that the jury had a sufficient basis on which to find that Woodruff used or carried a firearm.

Finally, we are unpersuaded by Woodruff's argument that, in light of Apprendi, the district court erred by applying the 25 year statutory minimum under § 924(c)(1)(C)(i) because the indictment failed to allege that it was a second or subsequent conviction under § 924(c). "Other than the fact of a prior conviction, any

---

[5]Pursuant to 18 U.S.C. § 921(a)(3), "[t]he term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."

16

fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S. Ct. at 2362-63.

Title 18 U.S.C. § 924(c)(1)(A) mandates a punishment for any defendant who, "during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." If a defendant has a second or subsequent conviction, this provision imposes a mandatory minimum sentence of 25 years. See 18 U.S.C. § 924(c)(1)(C)(i). In United States v. Pounds, 230 F.3d 1317, 1319 (11th Cir. 2000), we held that 18 U.S.C. § 924(c)(1)(A)(iii), which provides for a 10 year minimum mandatory sentence if the firearm is discharged during the offense, was a sentencing factor, which did not have to be charged in the indictment, rather than an element of the offense. In so holding, we noted that Apprendi was inapplicable because "every conviction under § 924(c)(1)(A) carries with it a statutory maximum sentence of life imprisonment, regardless of what subsection the defendant is sentenced under." Id. (emphasis added). Here, as with § 924(c)(1)(A), every conviction under § 924(c)(1)(C) carries with it a statutory maximum sentence of life imprisonment. Accordingly, the imposition of an enhanced sentence pursuant to a particular subsection does not implicate Apprendi. Because Woodruff's case involves a sentencing factor, not an element of the offense, and because the maximum possible sentence he could

17

receive under § 924(c) is life imprisonment, the district court did not err by enhancing his sentence pursuant to § 924(c)(1)(a)(iii).

Because we can find no legal errors surrounding the trial or sentencing proceedings, we affirm.

**AFFIRMED.**