[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12095
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cr-00292-RDP-JEO-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARK ALAN LOVE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(June 6, 2017)

Before TJOFLAT, MARCUS, and ROSENBAUM, Circuit Judges.

PER CURIAM:

After a jury trial, Mark Alan Love was convicted of knowingly receiving and distributing child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and of knowingly possessing child pornography involving a prepubescent minor, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2).  For these offenses, he was sentenced to 135 months of imprisonment.  On appeal, he challenges his convictions and sentences on three grounds:  (1) the evidence was insufficient to show that he knowingly possessed, received, and distributed "child pornography," instead of what he calls "legal child erotica"; (2) the jury instruction for the distribution count defined too broadly what it means to "distribute" child pornography; and (3) the court imposed a procedurally and substantively unreasonable sentence.  After careful review, we affirm.

## I.  Sufficiency of the Evidence

Love first challenges the sufficiency of the evidence to support his convictions.  In Love's view, the government failed to prove that he knowingly possessed, received, and distributed "child pornography" and not just "legal child erotica."

We review *de novo* the sufficiency of the evidence to support a conviction, "viewing the evidence in the light most favorable to the government, drawing all reasonable inferences and making all credibility choices in the government's favor."  *United States v. Pruitt*, 638 F.3d 763, 765 (11th Cir. 2011) (internal

2

quotation marks omitted).  "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt."  *United States v. Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013).  "The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial."  *Id.*

To sustain Love's three convictions, the government had to prove that Love not only possessed, received, and distributed "child pornography," but that he did so "knowingly" rather than mistakenly or inadvertently.  *See* 18 U.S.C. § 2252A(a)(2)(A), (5)(B); *see also United States v. Woodruff*, 296 F.3d 1041, 1047 (11th Cir. 2002) (an act is done knowingly when it is performed voluntarily and intentionally, not because of a mistake or accident).  "Child pornography" is defined in the statute as, among other things, "any visual depiction . . . where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct."  18 U.S.C. § 2256(8)(A).  A "minor" is any person under eighteen.  *Id.* § 2256(1).  "Sexually explicit conduct," in turn, includes "masturbation" and "lascivious exhibition of the genitals or pubic area of any person."  *Id.* § 2256(2)(A).  Thus, the government had to prove Love knew the

3

"sexually explicit nature of the material and . . . the age of the performers." *United States v. X–Citement Video, Inc.*, 513 U.S. 64, 78 (1994).

The government's evidence established that in July 2014 a law-enforcement agent, using peer-to-peer file-sharing software, downloaded from an IP address registered to Love over 300 images that appeared to capture females under the age of eighteen in sexual poses. Some of the images featured girls who appeared to be six or seven years old. While the majority of images did not meet the federal definition of child pornography, Love does not dispute that some images did. For example, one of the images downloaded by the agent depicted a pubescent female sitting on a red carpet with her legs spread apart, and the photograph focused on her vagina, with the logo "lsmodels.com" in the top-right corner.

Officers executed a search warrant at Love's residence and seized a hard drive and a thumb drive. On the hard drive, under the password-protected user name "Mark," Love had created a folder titled "ls" in which he stored images and videos of child pornography. In total, the government found roughly 2,000 images of children on the hard drive, and an expert witness testified that about half met the federal definition of child pornography. For example, the hard drive included an image of a prepubescent female standing with her legs spread apart and displaying her vagina and buttocks, with the logo "lsmodels.com" at the top right. The thumb drive contained 70 videos of child pornography.

4

The government also introduced statements Love made during an interview with law enforcement. Love admitted having "nude photos of prepubescent children." He stated that he viewed downloaded images roughly once per week. He explained that, to find the material, he had been using specific search terms, "teen," "lolita," "ls," "ls model," and "ls dream," for the previous six to nine months. An expert witness testified that these search terms were "consistent with the search terms that are used to search for child pornography."

Love does not dispute that the evidence is sufficient to show that he possessed, received, and distributed child pornography. He challenges only whether he did so "knowingly." That is, Love argues that the government failed to prove his knowledge because the evidence was equally consistent with an interpretation that he knowingly possessed, received, and distributed only "legal child erotica"—*i.e.* images of minors which did not depict "sexually explicit conduct" as defined in § 2256(2)(A). *See Cosby v. Jones*, 682 F.2d 1373, 1383 (11th Cir. 1982) ("[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt."). Love maintains that any images of child pornography on his hard drive or thumb drive were there inadvertently as a

result of his searches for child erotica and that he did not know of the images because he did not view all the images he downloaded.

Viewing the evidence and drawing all reasonable inferences in favor the government, however, the circumstantial evidence of Love's knowledge was more than sufficient to establish his guilt beyond a reasonable doubt. This evidence included roughly 2,000 images of children on Love's hard drive, about half of which constituted child pornography; the 70 videos of child pornography that he manually transferred to a thumb drive; Love's use of search terms, for a period of six to nine months, which were consistent with search terms used to search for child pornography; his weekly viewing of downloaded images; and his admission that he possessed nude photos of prepubescent children. From this evidence, a reasonable jury could conclude that Love possessed, received, and distributed child pornography knowingly and not merely inadvertently or mistakenly. *See Woodruff*, 296 F.3d at 1047. For instance, as even Love recognizes, the search terms he used "can produce both legal and illegal images." So it is unlikely that Love could, over a period of six to nine months, search for, download, and regularly view images of child erotica without also encountering images that depicted children engaged in sexually explicit conduct.

While Love's conduct is also consistent with possession, receipt, and distribution of child erotica, "[t]he evidence need not be inconsistent with every

6

reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." *Rodriguez*, 732 F.3d at 1303.  And, here, we agree with the government that "the far more reasonable interpretation of the trial evidence is simply that Love was interested in both child erotica and child pornography."  The jury was free to choose that reasonable interpretation and to conclude that Love knowingly possessed, received, and distributed child pornography.

Because sufficient evidence supports Love's convictions, the district court did not err in denying his motion for judgment of acquittal.

## II.  Jury Instruction

Next, Love argues that the district court erroneously instructed the jury by providing an overbroad definition of what it means to "distribute" child pornography for purposes of 18 U.S.C. § 2252A(a)(2).  In Love's view, the court's instruction permitted the jury to find distribution based on "mere downloading of images to a shared folder," which Love says is insufficient because a user could download an image to a shared folder "and immediately move[] it out of the shared folder" or disable file sharing altogether.

We review *de novo* the legal correctness of a jury instruction challenged before the district court.  *United States v. Isnadin*, 742 F.3d 1278, 1296 (11th Cir. 2014).  Nevertheless, "[d]istrict courts enjoy broad discretion in formulating jury

instructions."  *Id.*  "We will not reverse a defendant's conviction based on a challenge to the jury charge unless we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations."  *United States v. Gibson*, 708 F.3d 1256, 1275 (11th Cir. 2013) (internal quotation marks omitted).  When the challenged instruction, viewed as a whole and in the context of the entire trial, "accurately expresses the applicable law, there is no reason for reversal even though isolated clauses may, in fact, be confusing, technically imperfect, or otherwise subject to criticism."  *United States v. Gonzalez*, 834 F.3d 1206, 1222 (11th Cir. 2016) (internal quotation marks omitted); *see United States v. Seabrooks*, 839 F.3d 1326, 1333 (11th Cir. 2016), *petition for cert. filed*, (U.S. Feb. 16, 2017) (No. 16-8072) (noting that isolated statements from a charge, even if seemingly prejudicial on their face, may not be so when viewed in the context of the entire record of the trial).

"[A] defendant 'distributes' child pornography within the meaning of [18 U.S.C. § 2252A(a)(2)] when he either transfers it to another person or makes it accessible to others through a file-sharing website or peer-to-peer network."  *United States v. Grzybowicz*, 747 F.3d 1296, 1308 (11th Cir. 2014).  In this case, the district court, relying on *Grzybowicz*, instructed the jury as follows:

> To "distribute" something means to deliver or transfer possession of it to someone else, with or without money involved in the transaction. Uploading, downloading, and/or storing images and videos of child pornography into a shared folder which is fully accessible for other

8

users of peer-to-peer file sharing software constitutes distribution. However, the Government must prove beyond a reasonable doubt that the Defendant knew that his files would be shared.

Love wanted the instruction limited to "storing" images in a shared folder. The court indicated that it included the language "[u]ploading, downloading, and/or storing" because it wanted to "take[] into account the various ways that the item could have turned up in the shared folder." Nevertheless, both the government and the district court agreed that the mere act of downloading a file to a shared folder was not sufficient to constitute distribution.

Here, viewing the instruction as a whole and in the context of the entire trial, we are not left with any substantial doubt as to whether the jury was properly guided in its deliberations. *See Gibson*, 708 F.3d at 1275. The instruction informs the jury that distribution occurs when a defendant places images of child pornography—whether by "[u]ploading, downloading, and/or storing" them— "into a shared folder which is fully accessible for other users of peer-to-peer file sharing software" and the defendant "knew that his files would be shared." Contrary to Love's arguments, as the district court pointed out, the instruction does not treat the mere act of downloading a file into a shared folder as distribution. Rather, the instruction requires proof that the defendant, by downloading images to a shared folder fully accessible to other users of the peer-to-peer file-sharing

program, knew that the files would be shared.  Viewed as a whole, the instruction accurately expresses the applicable law.  *See Gonzalez*, 834 F.3d at 1222.

More broadly, viewing the charge in the context of the whole trial confirms that the charge was not misleading and that it accurately guided the jury's determination.  *See Seabrooks*, 839 F.3d at 1333.  Based on the evidence presented at trial and the parties' closing arguments, it was clear that the distribution count referred to the images downloaded by the agent from Love's IP address in July 2014.    And the agent's testimony established that she downloaded child pornography from Love's computer that was accessible through a peer-to-peer network.  Other testimony established that Love understood that the file-sharing program he used allowed other users to access the files in his shared folder.  In light of these facts, there is nothing to suggest the jury found that Love distributed child pornography on any basis other than by "mak[ing] it accessible to others through a . . . peer-to-peer network."  *See Grzybowicz*, 747 F.3d at 1308.

### III.  Sentencing

Finally, Love challenges the procedural and substantive reasonableness of his sentence.  He argues that the court treated his guideline range of 135 to 168 months of imprisonment as presumptively reasonable by anchoring the sentence in the guideline range and failing to consider the § 3553(a) factors and evaluate whether the child-pornography guideline, U.S.S.G. § 2G2.2, serves its stated

purpose. Love further argues that § 2G2.2 produces unreasonably harsh guideline ranges for non-production child-pornography offenses and does not serve the purposes of sentencing. By relying on the guideline range produced by § 2G2.2 in his case, Love contends, the court imposed a substantively unreasonable sentence.

We review a district court's sentence, whether inside or outside the applicable guideline range, under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). We first ensure that the district court followed the proper sentencing procedures and then consider whether the sentence is a reasonable one based on the totality of the circumstances and the 18 U.S.C. § 3553(a) sentencing factors. *United States v. Johnson*, 803 F.3d 610, 618 (11th Cir. 2015).

The district court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing listed in § 3553(a)(2), and the court must consider numerous factors relevant to that determination, including the applicable guideline range. *See* 18 U.S.C. § 3553(a)(1)–(7). The court may, in its discretion, give greater weight to some § 3553(a) factors over others. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).

The guideline range is the "starting point and the initial benchmark," but the court must consider all of the § 3553(a) factors in light of the totality of the circumstances. *Gall*, 552 U.S. at 49–50. In doing so, the court may not treat the

11

guideline range as presumptively reasonable. *United States v. Hill*, 643 F.3d 807, 880 (11th Cir. 2011). Rather, the court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50. Nevertheless, the Sentencing Guidelines are the "lodestar" of federal sentencing proceedings and they "inform and instruct the district court's determination of an appropriate sentence." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016).

The district court enjoys broad discretion in determining an appropriate sentence. "Abuse-of-discretion review allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *United States v. Carpenter*, 803 F.3d 1224, 1234 (11th Cir. 2015) (internal quotation marks omitted). A district court abuses its discretion when it (1) fails to afford consideration to relevant factors, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in weighing the proper factors. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*). Because we may not substitute our own judgment for the district court's, "we may only vacate a defendant's sentence if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Carpenter*, 803 F.3d at 1234 (internal quotation marks omitted). The party challenging the sentence bears

12

the burden of demonstrating that the sentence is unreasonable "in light of the entire record, the § 3553(a) factors, and the substantial deference afforded to sentencing courts." *Rosales-Bruno*, 789 F.3d at 1256.

Love's arguments are based mainly on a report to Congress that the U.S. Sentencing Commission released in February 2013. *See United States v. Cubero*, 754 F.3d 888, 898 (11th Cir. 2014) (discussing United States Sentencing Comm'n, *Special Report to Congress: Federal Child Pornography Offenses* (Dec. 2012)). Among other findings, the report "questions the appropriateness of the current guidelines scheme in § 2G2.2 for non-production cases where the offender used peer-to-peer file sharing and the Internet to receive and distribute pornography." *Id.* at 899. Although it recommends amending § 2G2.2, the Commission's report indicates that Congress needs to act first before the guideline could be amended because § 2G2.2, unlike most other guidelines, was promulgated pursuant to specific congressional directives. *Id.*

We have held that the Commission's report, despite its criticisms of § 2G2.2, does not render that guideline "invalid or illegitimate," nor does it alter the district court's duties to calculate the advisory guideline range under § 2G2.2. *Id.* at 900. Moreover, "[w]hile a district court may certainly consider the 2013 report in choosing the ultimate sentence," the court's use of § 2G2.2 "does not render [the defendant's] sentence procedurally or substantively unreasonable." *Id.*  Nor does

13

the report "require the district court to vary from the § 2G2.2-based guidelines range." *Id.* Likewise, the report does not alter this Court's duties in reviewing sentences based on § 2G2.2, and it does not abrogate "binding precedent about § 2G2.2 in this Circuit." *Id.*

Here, Love's sentence is procedurally and substantively reasonable. To begin with, the district court did not presume that the guideline range was reasonable or fail to "make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50. The court's use of the § 2G2.2-based guideline range does not alone "render [Love's] sentence procedurally or substantively unreasonable." *Cubero*, 754 F.3d at 900. And that the court sentenced him within the guideline range also raises no red flags. *See Molina-Martinez*, 136 S. Ct. 1347 (noting that the guideline range "anchor[s] the court's discretion in selecting an appropriate sentence"); *Hill*, 643 F.3d at 880 ("That a judge imposes sentences within the guidelines range in most cases is not a cause for concern."). Indeed, we ordinarily expect sentences within the guideline range to be reasonable. *See Carpenter*, 803 F.3d at 1234 (citing the defendant's sentence "at the very bottom" of the guideline range as a "factor[] which indicate[s] reasonableness").

Plus, the record demonstrates that the district court considered Love's arguments that the guideline range was too harsh but ultimately found no reason to vary from the guideline range based on the facts of the case. After hearing from

14

the parties regarding the appropriateness of the guideline range in Love's case, the court expressly recognized that the range was advisory and then explained its reasons for not varying downward. While the court agreed with Love that the images "certainly [were] less offensive than others the Court has seen," the court weighed that fact against the number of images involved, Love's "weekly sessions" of searching for and downloading child pornography, and the fact that the guideline range accounted for the "less offensive" nature of images. Thus, the record shows that the court "grappled with [Love's] argument against a Guidelines sentence, and ultimately rejected it." *See Carpenter*, 803 F.3d at 1233.

To the extent Love argues that the district court was required to vary downward based on the Sentencing Commission's report, he is incorrect. While the court was empowered to consider the 2013 report and to grant a downward variance for reasons expressed therein, the court was not "compelled" to do so. *See Cubero*, 754 F.3d at 900–01. Nor was the court required to provide any additional explanation for its decision not to vary downward in light of the report. *See Carpenter*, 803 F.3d at 1234.

Finally, the district court did not abuse its considerable discretion in sentencing Love to 135 months of imprisonment in reliance on the § 2G2.2-based guideline range. Love's sentence falls at the very low end of his guideline range of 135 to 168 months and is well below the statutory maximum sentence of 240

15

months, "two factors which indicate reasonableness." *See id.* "Moreover, we have emphasized the seriousness of child pornography offenses, and the harm they inflict on their victims, time and again." *Id.*; *see United States v. Yuknavich*, 419 F.3d 1302, 1309 (11th Cir. 2005) ("It goes without saying that possession of child pornography is not a victimless crime."); *United States v. Turner*, 626 F.3d 566, 674 (11th Cir. 2010) ("receiving and possessing child pornography helps create a market for more pornography, encouraging the victimization of more children").

In addition, the district court did not commit a clear error of judgment in concluding that a low-end guideline-range sentence reflected the nature, circumstances, and seriousness of his offenses. *See* 18 U.S.C § 3553(a)(1), (a)(2)(a). Love's conduct entailed the sexual exploitation of young children, and he possessed the equivalent of 7,454 images. That is more than twelve times the threshold number of images for the five-level enhancement under U.S.S.G. § 2G2.2(b)(7)(D). *See Carpenter*, 803 F.3d at 1235 (affirming substantive reasonableness of defendant's low-end sentence of 97 months where, among other things, he had eight times the threshold number of images for the same five-level enhancement). While Love's videos and images were "less offensive" than in other cases, the guideline range took that factor into account because Love did not receive a four-level enhancement for "sadistic or masochistic conduct or other depictions of violence." U.S.S.G. § 2G2.2(b)(4). Based on the totality of the

16

circumstances and the § 3553(a) sentencing factors, Love has not shown that the district court imposed a sentence "that lies outside the range of reasonable sentences dictated by the facts of the case." *Carpenter*, 803 F.3d at 1234; *see Rosales-Bruno*, 789 F.3d at 1256.

For these reasons, we affirm Love's convictions and his total sentence of 135 months of imprisonment.

**AFFIRMED.**