[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13904

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DENNIS LEE LINE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cr-00050-WWB-DCI-1

_____

Before NEWSOM, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Dennis Line, a convicted sex offender, appeals his conviction for attempted enticement of a minor to engage in sexual activity. On appeal, Line argues that the district court abused its discretion when it admitted evidence of his former teaching career. After careful review, we affirm.

## I.

A grand jury returned an indictment charging Line with one count of attempting to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). Before trial, Line moved in limine to exclude "the fact that Mr. Line was formerly employed as a schoolteacher." His argument was twofold. First, he contended, "the fact that [he] was a previously a teacher is not relevant to prove any material fact at issue in this case." And second, Line posited, even if his teaching career were relevant, "it must be excluded because its probative value is substantially outweighed by the danger of unfair prejudice." The district court granted the motion in part and denied it in part, allowing the government to introduce Line's statement to law enforcement where he mentions the fact that he was a teacher and never had any issues, but requiring the government to redact certain portions of a written statement that were cumulative. At trial, the government elicited the following facts.

Line, a fifty-three-year-old man, created a profile on a dating application called Badoo. On the Badoo profile, he said that his name was Stephen and described himself as fifty years old. From "Stephen's" account, Line struck up a conversation with "Amber," whose profile said she was a forty-one-year-old woman. After they started chatting, Amber asked Line, "[Y]o[u] ok if I am younger[?]," to which he replied, "Absolutely okay." Amber then told Line that she was only fifteen years old and a freshman in high school. Line replied, "Yikes. That's young," but he kept chatting with Amber anyway, at one point urging her, "You can at least tell me that you're 18." In reality, Amber was an Orange County Sheriff's Office detective, conducting a child-predator sting operation.

Line pressed Amber about her sexual experience, asking "What have you done? You're pretty young," and "How many positions did you try?" He then told her that he could "teach [her] stuff. . . . anything [she] want[s]," and described specific sex acts that he enjoyed. Line acknowledged that asking Amber for oral sex would be "illegal, girl, as much as I would love it," but then assured her that if they got together to "experiment and have a little fun," he would "be patient. And gentle. And careful. And amazing. . . . I would use plenty of protection. Don't worry about that." Line encouraged Amber to send him pictures of herself, and finally propositioned her "let's definitely meet tonight." After Amber agreed to meet up, Line reassured her, saying, "I don't think we should, like, do it do it yet. I want to go easy and slow with you. . . . Maybe some kissing, touching, oral?" The two then made a plan to meet that night near a local Boston Market restaurant and continued to

discuss the various sex acts Line wanted to perform with Amber. They also had a three-minute phone call during which Line confessed that his "biggest worry" was that Amber was "setting [him] up . . . because I'm old and you're young and I could get in serious trouble for coming over and seeing you. . . . If the cops are there, I'm screwed for the rest of my life."

Around 11 p.m. on February 9, 2022, Line pulled up to Boston Market as planned, where Orange County Sheriff's Office deputies were waiting to arrest him. During a post-*Miranda* interview, Line admitted that he was "pretty sure" he knew why he was being questioned and that he had been "texting somebody that I shouldn't have been texting with; a minor, stupid, like, I have some issues." One of the detectives asked what he meant by "minor," and Line specified that "the girl said she was 15." Although Line claimed he "would never have done anything" if he had actually met "Amber," he acknowledged that he had discussed meeting up with her to kiss and have oral sex and admitted that his conduct was illegal. He also conceded that it "looks really bad" that, while he had participated in sexually flirtatious conversations with several adults he met on dating apps, he had only ever tried to meet the one person he believed to be a child.

Despite all these concessions, Line still insisted (to the detectives who interviewed him and again at trial) that "it's all fictional to me, it's all, like, not real." "It's a game of attention," he said, "the game of being at a different place, making your life different." Similarly, during his interrogation, Line wrote a letter to his wife,

apologizing for his actions and explaining that he was using dating apps to make friends and to get attention and that talking to strangers he met online was "almost like a video game." When the interrogating detective asked Line if this was "a pattern or something that you're going to do continuously, preying on, on children," Line invoked his twenty-eight-year teaching career, swore he "never had an issue" in all those years, and implored the detective to "look at my record."

A few days after his arrest, Line posted a public message on his Facebook account, directed at his former colleagues. In that post, Line confessed that he "made an unthinkable choice a few days ago, that "[i]t was the most embarrassing and humiliating thing I have ever done," that he was "responsible for what [he] did and must now pay the consequences," and that he was "truly sorry." Also in that post, Line identified by name a list of schools where he had worked, addressing directly the "students, parents, and teachers" of those schools, and stating, "I know that I have tainted your opinions of me. I deserve your hatred."

After two days of evidence and just over an hour of deliberations, the jury returned a guilty verdict. Line was later sentenced to 120 months' imprisonment and ten years of supervised release. This appeal follows.

## II.

"We review evidentiary rulings only for an abuse of discretion." *Sowers v. R.J. Reynolds Tobacco Co.*, 975 F.3d 1112, 1122 (11th Cir. 2020). "An abuse of discretion arises when the district court's

decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006) (quoting *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005)). "Because 'we recognize a significant range of choice for the district court on evidentiary issues,' our review of such rulings is very limited and 'we defer to the district court's decisions to a considerable extent.'" *United States v. Akwuba*, 7 F.4th 1299, 1313 (11th Cir. 2021) (alterations adopted) (quoting *United States v. Brown*, 415 F.3d 1257, 1264–65 (11th Cir. 2005)). We need not reverse a conviction if the evidentiary error "had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." *United States v. Fortenberry*, 971 F.2d 717, 722 (11th Cir. 1992); *accord Goulah v. Ford Motor Co.*, 118 F.3d 1478, 1483 (11th Cir. 1997) ("We will not overturn an evidentiary ruling unless the moving party proves a substantial prejudicial effect."). We determine whether an error had substantial influence on the outcome by weighing the record as a whole. *See United States v. Montalvo-Murillo*, 495 U.S. 711, 722 (1990).

## III.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). Generally, all relevant evidence is admissible at trial unless provided otherwise by federal statute, the United States Constitution, the Federal Rules of Evidence, or the Supreme Court. Fed. R. Evid. 402.

Relevant evidence "may" be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Exclusion under Rule 403 is an extraordinary remedy that courts should employ "only sparingly since it permits the trial court to exclude concededly probative evidence." *Smith*, 459 F.3d at 1295 (quoting *United States v. Norton*, 867 F.2d 1354, 1361 (11th Cir. 1999)). Accordingly, we view the disputed evidence "in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id.* (quoting *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989)). Unfair prejudice is defined as "relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

Line falls far short of meeting his heavy burden on appeal. First, we conclude that the district court did not err in allowing the government to elicit evidence of Line's teaching career because that evidence was, in fact, relevant and not unduly prejudicial. Among other elements, the government was required to prove that Line *knowingly* attempted to entice fifteen-year-old "Amber" to engage in sexual activity. *See* 18 U.S.C. § 2422(b). "We have long held that the term 'knowingly' means that the act was performed voluntarily and intentionally, and not because of a mistake or accident." *United States v. Woodruff*, 296 F.3d 1041, 1047 (11th Cir. 2002). Line's decades-long career as a teacher—during which

he worked with minor students—is probative of his knowledge of appropriate boundaries with children and, therefore, to his knowledge of the wrongfulness of his conduct with Amber. In particular, Line's invocation of his reputation as a teacher, including that he "never had an issue" in all those years and his request that the detectives "look at [his] record," all suggest that he knew how to interact properly with minors because he had, in fact, acted appropriately around them all his life. In other words, Line's teaching career is relevant to show that he did *not* attempt to entice a minor by accident or mistake. We are thus not persuaded by Line's conclusory argument that this evidence was unduly prejudicial because, upon hearing he was a former teacher, the jury would be left to wonder if he had previously harmed other minors. To put it plainly, the government elicited no evidence, and made no argument suggesting, that Line had committed other crimes against children. We thus conclude that the district court did not abuse its discretion in admitting evidence of Line's teaching career because that evidence was probative of his mens rea and was not unduly prejudicial.

Second, even if the district court had erred in admitting evidence of Line's career, "[a] district court's erroneous admission of evidence does not warrant reversal if the purported error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." *Fortenberry*, 971 F.2d at 722. Here, the "evidence uninfected by error" is overwhelming: Amber repeatedly told Line that she was a minor and a freshman in high school; Amber's profile featured two pictures that appeared

23-13904                 Opinion of the Court                 9

to be of a minor (one of which was a prom-style portrait of a girl with braces); Line asked Amber to "at least tell me that you're 18. LOL," revealing *both* that he knew she was under eighteen years old *and* that it was, therefore, wrong to engage with her; Line told both Amber and the police that he was in a sexless marriage and was bored; Line told the detective, during his interrogation, "That should have been done. When she said she was 15, I knew"; and Line clearly expressed remorse for, in his own words, "the most embarrassing and humiliating thing [he] ha[d] ever done" and "the lowest point in [his] life," and he publicly stated that he was "responsible for what [he] did and must now pay the consequences." This evidence amply supported his conviction. We also note that Line used the evidence of his teaching career in his own favor in closing, telling the jury, "[i]t's helpful to Mr. Line that he was a teacher because, had this been what he was doing, what he was planning on doing, was he a danger in going after 15-year-old girls, there would be footprints in the sand. There simply would. There's no way he could have survived 28 years in school if his excitement was going after 15-year-old girls." All of this is to say, even if the evidence of Line's job were admitted in error, Line has failed to show substantial influence on the outcome of his trial.

★  ★  ★  ★

Accordingly, for the reasons stated, we affirm Line's conviction.

**AFFIRMED.**